1  Kevin R. Crisp (Bar No. 97504)
Jeffrey A. Vinnick (Bar No. 137005)
2  Elizabeth P. Trent (Bar No. 272258)
HAIGHT BROWN & BONESTEEL LLP
3  555 South Flower Street, Forty-Fifth Floor
Los Angeles, California 90071
4  Telephone: 213.542.8000
Facsimile: 213.542.8100
5
Attorneys for Defendants Stan Black & Decker (U.S.)
6  Inc. and Platt Electric Supply, Inc.

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10

11  ARTHUR R. YOST, JR.; ERIKA YOST,      )   Case No. 3:12-cv-03969 JST
                                          )
12            Plaintiffs,                 )   [Assigned to Judge Jon S. Tigar]
                                          )
13       vs.                              )   Related Case:
                                          )   Yost v. Rohm Co., Ltd.
14  DEWALT INDUSTRIAL TOOL CO.;           )   No. 4:13-cv-5203-YGR
    PLATT ELECTRICAL SUPPLY, INC.,        )
15  DOES 1 TO 100,                        )   DECLARATION OF KEVIN CRISP
                                          )
16            Defendants.                 )   Date:   March 20, 2014
    _____)   Time:   2:00 PM
17                                            Ctrm:   9

18       I, Kevin Crisp, declare as follows:

19       1.      I am an attorney at the law firm of Haight, Brown & Bonesteel, L.L.P.,

20  counsel of record for Defendant Black & Decker (US) Inc. and Platt Electric Supply, Inc.

21  in the above-captioned action.  I am a member in good standing of the State Bar of

22  California and have been admitted to practice before this Court.  I have personal

23  knowledge of the facts set forth in this Declaration and, if called as a witness, could and

24  would testify competently to such facts under oath.

25       2.      Attached hereto as Exhibit "A" is a true and correct copy of Plaintiffs'

26  Complaint in this action.

27       3.      Attached hereto as Exhibit "B" are true and correct copies of the cited pages

28  of the certified deposition transcript of Plaintiff Arthur R. Yost, taken on May 3, 2013.

LAW OFFICES
HAIGHT, BROWN &
BONESTEEL, L.L.P.
Los Angeles

SW05-0000349
10012921.1

1

DECLARATION OF KEVIN CRISP

4.    Attached collectively hereto as Exhibit "C" are true and correct copies of Defendants' Special Interrogatories, set number 1 propounded on Plaintiff along with Plaintiff's responses.

5.    Attached hereto as Exhibit "D" is a true and correct copy of an illustration of a Hammerdrill naming its parts.

Executed on February 9, 2014, at Los Angeles, California.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____
Kevin Crisp

**LAW OFFICES**
HAIGHT, BROWN &
BONESTEEL, L.L.P.
Los Angeles

SW05-0000349
10012921.1

2

DECLARATION OF KEVIN CRISP

EXHIBIT A

05/29/2012  17:06   510744~~24          MUSTANG                        PAGE  03/21

                                                                       5 3 ?
                                                                        9 : 0 5

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:** DeWalt Industrial Tool Co.; Platt
**(AVISO AL DEMANDADO):** Electric Supply, Inc., Does 1 to
100

|  |
|---|
| **FOR COURT USE ONLY** (SOLO PARA USO DE LA CORTE) |
| ENDORSED FILED |
| 2012 MAY 24  AM 10: 25 |
| M. Rawson CA |

**YOU ARE BEING SUED BY PLAINTIFF:** Arthur R. Yost, Jr.;
**(LO ESTÁ DEMANDANDO EL DEMANDANTE):** Erika Yost

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: (El nombre y dirección de la corte es): | **CASE NUMBER:** (Número del Caso): |
|---|---|
| Santa Clara Superior Court 191 North First Street San Jose, CA 95113 | 1 1 2 C V 2 2 5 2 5 2 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):
Joshua Henderson, Esq. (SBN 348366)          650 367-6011     650-367-0367
Carcione, Cattermole, Dolinski, et al.
601 Brewster Ave., Second Floor
Redwood City, CA 94063

DATE:                                    Clerk, by M. Rawson                          , Deputy
**(Fecha) MAY 2 4 2012**                 (Secretario)                                  (Adjunto)

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).

**NOTICE TO THE PERSON SERVED:** You are served
1. [ ] as an individual defendant.
2. [X] as the person sued under the fictitious name of (specify): Does 1
3. [X] on behalf of (specify): STANLEY Black & Decker, Inc
   Sued in as Doe 1
   under: [X] CCP 416.10 (corporation)        [ ] CCP 416.60 (minor)
          [ ] CCP 416.20 (defunct corporation) [ ] CCP 416.70 (conservatee)
          [ ] CCP 416.40 (association or partnership) [ ] CCP 416.90 (authorized person)
          [ ] other (specify):
4. [ ] by personal delivery on (date):

| | |
|---|---|
| Form Adopted for Mandatory Use Judicial Council of California SUM-100 (Rev. July 1, 2009) | **SUMMONS** |

Page 1 of 1
Code of Civil Procedure §§ 412.20, 465

Legal Solutions La Plus

4

05/24/2012 16:23 FAX  5503670387                                                                 002/002



```
1    Joseph W. Carcione, Jr., Esq. (State Bar No. 56693)
     Joshua Henderson, Esq. (State Bar No. 248366)
2    CARCIONE, CATTERMOLE, DOLINSKI,
     STUCKY, MARKOWITZ & CARCIONE, L.L.P.
3    601 Brewster Avenue
     P.O. Box 3389
4    Redwood City, CA 94064-3389
     Telephone: (650) 367-6811
5    Facsimile: (650) 367-0367

6

7    Attorneys for Plaintiffs

8

9

10              SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                    FOR THE COUNTY OF SANTA CLARA

12

13   ARTHUR R. YOST, JR.; ERIKA YOST,         Case No. 112CV225252

14              Plaintiffs,

15   vs.                                       DOE AMENDMENT TO COMPLAINT
                                               [SUBSTITUTING DEFENDANT'S
16   DEWALT INDUSTRIAL TOOL CO.;               TRUE NAME FOR FICTITIOUS NAME]
     PLATT ELECTRIC SUPPLY, INC., DOES
17   1 TO 100,                                 BY FAX

18              Defendants.

19

20        Plaintiff was ignorant of all defendants' names and therefore designated those

21   defendants by fictitious names in this action.  Fictitiously named defendants true names have

22   now been discovered, and Plaintiff hereby amends the complaint as follows:

23        TRUE NAME                           FICTITIOUS NAME

24   STANLEY BLACK & DECKER, INC.             DOE ONE (1)

25
     Dated: May 25, 2012
26                                           CARCIONE, CATTERMOLE, DOLINSKI,
                                             STUCKY, MARKOWITZ & CARCIONE, LLP
27
                                             By:
28                                                    Attorney for Plaintiff
```

197046 / mb                          DOE AMENDMENT TO COMPLAINT
                                            (05/25/12)

107M5148992TE.III - 5/24/2012 c:2607 PIA

05/29/2012  17:06   51074   24                    MUSTANG                        PAGE  10/21

PLD-PI-001

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|

Joshua Henderson, Esq. (SBN 249366)
Carcione, Cattermole, Dolinski, et al.
601 Brewster Ave., Second Floor

Redwood City, CA 94064
   TELEPHONE NO: 650-367-5811    FAX NO. (Optional): 650-367-0367
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name): Arthur R. Yost, Jr.; Erika Yost

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Santa Clara
   STREET ADDRESS: 191 North First Street
   MAILING ADDRESS: 191 North First Street
   CITY AND ZIP CODE: San Jose, CA 95113
   BRANCH NAME:

PLAINTIFF: Arthur R. Yost, Jr.; Erika Yost


DEFENDANT: DeWalt Industrial Tool Co.; Platt Electric
Supply, Inc.

[X] DOES 1 TO 100

**COMPLAINT—Personal Injury, Property Damage, Wrongful Death**
   [ ] AMENDED (Number):
**Type (check all that apply):**
[ ] **MOTOR VEHICLE**    [ ] **OTHER** (specify):
    [ ] Property Damage    [ ] Wrongful Death
    [X] Personal Injury    [ ] Other Damages (specify):

**Jurisdiction (check all that apply):**
[ ] **ACTION IS A LIMITED CIVIL CASE**
   Amount demanded  [ ] does not exceed $10,000
             [ ] exceeds $10,000, but does not exceed $25,000
[X] **ACTION IS AN UNLIMITED CIVIL CASE** (exceeds $25,000)
[ ] **ACTION IS RECLASSIFIED** by this amended complaint
    [ ] from limited to unlimited
    [ ] from unlimited to limited

CASE NUMBER:

**1 1 2 C V 2 2 5 2 5 2**

1. Plaintiff (name or names): Arthur R. Yost, Jr.; Erika Yost

   alleges causes of action against defendant (name or names): DeWalt Industrial Tool Co., Platt Electric
   Supply, Inc.
2. This pleading, including attachments and exhibits, consists of the following number of pages:  12
3. Each plaintiff named above is a competent adult
   a. [ ] except plaintiff (name):
     (1) [ ] a corporation qualified to do business in California
     (2) [ ] an unincorporated entity (describe):
     (3) [ ] a public entity (describe):
     (4) [ ] a minor [ ] an adult
        (a) [ ] for whom a guardian or conservator of the estate or a guardian ad litem has been appointed
        (b) [ ] other (specify):
     (5) [ ] other (specify):

   b. [ ] except plaintiff (name):
     (1) [ ] a corporation qualified to do business in California
     (2) [ ] an unincorporated entity (describe):
     (3) [ ] a public entity (describe):
     (4) [ ] a minor [ ] an adult
        (a) [ ] for whom a guardian or conservator of the estate or a guardian ad litem has been appointed
        (b) [ ] other (specify):
     (5) [ ] other (specify):


   [ ] Information about additional plaintiffs who are not competent adults is shown in Attachment 3.

| | | |
|---|---|---|
| Form Approved for Optional Use<br>Judicial Council of California<br>PLD-PI-001 [Rev. January 1, 2007] | **COMPLAINT—Personal Injury, Property**<br>**Damage, Wrongful Death** | Page 1 of 3<br>Code of Civil Procedure, § 425.12 |

Legal Solutions Plus

| | PLD-PI-001 |
|---|---|
| SHORT TITLE: Yost  v  DeWalt | CASE NUMBER: |

4.  ☐ Plaintiff (name):

  is doing business under the fictitious name (specify):

  and has complied with the fictitious business name laws.

5.  Each defendant named above is a natural person
  a.  ☒ except defendant (name): DeWalt
     Industrial Tool Co.

  (1)  ☒ a business organization, form unknown
  (2)  ☐ a corporation
  (3)  ☐ an unincorporated entity (describe):

  (4)  ☐ a public entity (describe):

  (5)  ☐ other (specify):

  c.  ☐ except defendant (name):

  (1)  ☐ a business organization, form unknown
  (2)  ☐ a corporation
  (3)  ☐ an unincorporated entity (describe):

  (4)  ☐ a public entity (describe):

  (5)  ☐ other (specify):

  b.  ☒ except defendant (name): Platt Electric
     Supply, Inc.

  (1)  ☐ a business organization, form unknown
  (2)  ☒ a corporation
  (3)  ☐ an unincorporated entity (describe):

  (4)  ☐ a public entity (describe):

  (5)  ☐ other (specify):

  d.  ☐ except defendant (name):

  (1)  ☐ a business organization, form unknown
  (2)  ☐ a corporation
  (3)  ☐ an unincorporated entity (describe):

  (4)  ☐ a public entity (describe):

  (5)  ☐ other (specify):

  ☐ Information about additional defendants who are not natural persons is contained in Attachment 5.

6.  The true names of defendants sued as Does are unknown to plaintiff.
  a.  ☒ Doe defendants (specify Doe numbers): 1-100     were the agents or employees of other
     named defendants and acted within the scope of that agency or employment. See Attachment-Does 6
  b.  ☐ Doe defendants (specify Doe numbers): _____ are persons whose capacities are unknown to
     plaintiff.

7.  ☐ Defendants who are joined under Code of Civil Procedure section 382 are (names):

8.  This court is the proper court because
  a.  ☒ at least one defendant now resides in its jurisdictional area.
  b.  ☐ the principal place of business of a defendant corporation or unincorporated association is in its jurisdictional area.
  c.  ☒ injury to person or damage to personal property occurred in its jurisdictional area.
  d.  ☐ other (specify):

9.  ☐ Plaintiff is required to comply with a claims statute, and
  a.  ☐ has complied with applicable claims statutes, or
  b.  ☐ is excused from complying because (specify):

7

| SHORT TITLE: Yost v DeWalt | CASE NUMBER: | PLD-PI-001 |
|---|---|---|

10. The following causes of action are attached and the statements above apply to each *(each complaint must have one or more causes of action attached)*:
   a. ☐ Motor Vehicle
   b. ☒ General Negligence
   c. ☐ Intentional Tort
   d. ☒ Products Liability
   e. ☐ Premise Liability
   f. ☒ Other *(specify)*:  LOSS OF CONSORTIUM

11. Plaintiff has suffered
   a. ☒ wage loss
   b. ☒ loss of use of property
   c. ☒ hospital and medical expenses
   d. ☒ general damage
   e. ☒ property damage
   f. ☒ loss of earning capacity
   g. ☐ other damage *(specify)*:

12. ☐ The damages claimed for wrongful death and the relationships of plaintiff to the deceased are
   a. ☐ listed in Attachment 12.
   b. ☐ as follows:

13. The relief sought in this complaint is within the jurisdiction of this court.

14. Plaintiff prays for judgment for costs of suit; for such relief as is fair, just, and equitable; and for
   a. (1) ☒ compensatory damages
      (2) ☒ punitive damages
      The amount of damages is *(in cases for personal injury or wrongful death, you must check (1))*:
      (1) ☒ according to proof
      (2) ☐ in the amount of: $

15. ☒ The paragraphs of this complaint alleged on information and belief are as follows *(specify paragraph numbers)*:
   All

Date: May 23, 2012

Joshua Henderson, Esq.
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PLAINTIFF OR ATTORNEY)

| PETITIONER/PLAINTIFF:  Yost | CASE NUMBER |
|---|---|
| RESPONDENT/DEFENDANT:  DeWalt | |

Attachment--Does 6
Page 4

Plaintiff does not know the true names of the defendants sued herein as DOES 1 through 100.  Plaintiff is
informed and believes and thereon alleges, that each of the defendants designated herein as a DOE is
responsible in some manner for the events and happenings herein referred to, and caused injury and
damages proximately thereby to the plaintiff as herein alleged.  Wherever in this complaint any defendant is
the subject of any charging allegation by plaintiff, it shall be deemed that said defendants, DOES 1 through
100, inclusive, and each of them, are likewise the subject of said charging allegation


Legal
Solutions
Plus

| SHORT TITLE:  Yost v DeWalt | PLD-PI-001(5) |
|---|---|
| | CASE NUMBER: |

____First_____ CAUSE OF ACTION—Products Liability            Page 5_____
    (number)

ATTACHMENT TO  [X] Complaint  [ ] Cross-Complaint
*(Use a separate cause of action form for each cause of action.)*

Plaintiff (name):  Arthur R. Yost, Jr.

Prod. L-1. On or about (date):  October 11, 2011      plaintiff was injured by the following product:
        DeWalt Cordless Hammer Drill, Model Number DCD970, Type 1, 18 Volt

        See Attachment Prod. L - 1

Prod. L-2. Each of the defendants knew the product would be purchased and used without inspection for defects.
    The product was defective when it left the control of each defendant. The product at the time of injury
    was being
        [X]  used in the manner intended by the defendants.
        [X]  used in a manner that was reasonably foreseeable by defendants as involving a substantial danger not
             readily apparent. Adequate warnings of the danger were not given.

Prod. L-3. Plaintiff was a
        [X]  purchaser of the product.                    [X]  user of the product.
        [ ]  bystander to the use of the product.          [ ]  other (specify):

PLAINTIFF'S INJURY WAS THE LEGAL (PROXIMATE) RESULT OF THE FOLLOWING:

Prod. L-4. [X] Count One–Strict liability of the following defendants who
        a. [X]  manufactured or assembled the product (names): DeWalt Industrial Tool Co.


            [X] Does 1_____ to 30____
        b. [X]  designed and manufactured component parts supplied to the manufacturer (names):


            [X] Does 31_____ to 60____
        c. [X]  sold the product to the public (names): DeWalt Industrial Tool Co., and Platt
                Electric Supply, Inc.

            [X] Does 61_____ to 100____

Prod. L-5. [X] Count Two–Negligence of the following defendants who owed a duty to plaintiff (names):
        DeWalt Industrial Tool Co., and Platt Electric Supply, Inc.
            [X] Does 1_____ to 100____

Prod. L-6. [X] Count Three–Breach of warranty by the following defendants (names): DeWalt Industrial Tool
        Co., and Platt Electric Supply, Inc.
            [X] Does 1_____ to 100____
        a. [X]  who breached an implied warranty
        b. [x]  who breached an express warranty which was
            [x]  written  [X]  oral

Prod. L-7. [X]  The defendants who are liable to plaintiffs for other reasons and the reasons for the liability are
            [X]  listed in Attachment-Prod. L-7    [ ]  as follows:

Form Approved for Optional Use
Judicial Council of California
PLD-PI-001(5) [Rev. January 1, 2007]         CAUSE OF ACTION—Products Liability    Legal
                                                                  Solutions
                                                                  ⚖ Plus    Code of Civil Procedure, § 425.12

10

05/29/2012  17:06   51074&   :4              MUSTANG                      PAGE  15/21
                                                                          ☑014/020

| SHORT TITLE: Yost  v  DeWalt | CASE NUMBER: |
| --- | --- |

1  Attachment Prod. L - I

2  1. On October 11, 2011, Arthur R. Yost, Jr. was performing Electrical Repairs at Buffalo Wild Wings

3  Restaurant in San Jose, CA. On that day, his task was to repair an emergency light above one of the

4  restaurant's doors.

5

6  2. To accomplish the work, Mr. Yost climbed a fiberglass ladder and began using a Cordless Hammer

7  Drill, which was designed and manufactured by Defendants DeWalt Industrial Tool Co. and Does 1-60.

8  Mr. Yost had purchased the aforementioned drill on September 6, 2010 from Platt Electric Supply, Inc.,

9  and Does 61-100.

10

11  3. While performing his job, Mr. Yost's Cordless Hammer Drill unexpectedly and prematurely

12  disengaged from the drillbit. This unexpected and premature disengagement caused Mr. Yost to lose his

13  balance and fall from his ladder, causing severe physical injuries.

14

15

16

17

18

19

20

21

22

23

24

25

26  *(Required for verified pleading)* The Items on this page stated on information and belief *(specify item numbers, not line numbers):*

27

This page may be used with any Judicial Council form or any other paper filed with this court.   Page 6

Form Approved by the
Judicial Council of California
MC-020 [New January 1, 1987]
Optional Form

**ADDITIONAL PAGE**
Attach to Judicial Council Form or Other Court Paper

Legal
Solutions
Ca Plus

CRC 201  921

| PETITIONER/PLAINTIFF: Yost | CASE NUMBER |
|---|---|
| RESPONDENT/DEFENDANT: DeWalt | |

Attachment: Prod. L - 7
Page7

1. Defendants DeWalt Industrial Tool Co., and Platt Electric Supply, Inc., and Does 1-100, are, and at all times herein mentioned were, engaged in the business of designing, engineering, manufacturing, fabricating, re-manufacturing, assembling, supplying, distributing, selling, testing, repairing and inspecting drills, including the subject Cordless Hammer Drill, and their component parts. Defendants hold, and have held, themselves out to the public as having superior knowledge, skill and experience in the design, engineering, manufacture, fabrication, re-manufacture, assembly, supply, sale, distribution, testing, repair and inspection of drills, including the Cordless Hammer Drill, and their component parts. In the course of their businesses, said Defendants designed, engineered, manufactured, fabricated, re-manufactured, assembled, supplied, sold, distributed, tested, repaired, and/or inspected the subject Cordless Hammer Drill, and its component parts. Defendants expressly and impliedly warranted the Cordless Hammer Drill and its component parts were fit for their intended use and free of defects. Defendants marketed, sold, distributed and caused the Cordless Hammer Drill and its component parts to be introduced into the stream of commerce.

2. On October 11, 2011, Arthur J. Yost was using the Cordless Hammer Drill and drill bit to do electrical repair work in a normal, intended, and foreseeable manner when the subject accident occurred.

3. At the time of the subject accident, the Cordless Hammer Drill and its component parts were defective in design, manufacture, assembly, repair and/or inspection, which rendered the Cordless Hammer Drill unsafe in its intended operation.

4. The Cordless Hammer Drill and its component parts were also defective due to a failure to warn of the dangers inherent in said product and failure to provide adequate instructions regarding the avoidance of such hazards. Said defects included, but are not limited to: defects with respect to the choice of material used for the chuck; defects with respect to the design of the chuck; defects in the failure to have redundant safety measures to protect the user in case the chuck prematurely disengaged a drill bit; and defects in the instructions/ warnings provided in that they failed to identify the useful life of the chuck, along with a warning of the dangers of using the chuck beyond that useful life. There were other and related defects whose nature cannot yet be ascertained due both to the need for further investigation and discovery.

5. The defects in the Cordless Hammer Drill and its component parts existed when said products left the Defendants' possession and control.

6. The defects alleged above were direct, proximate and legal causes of the subject accident, and Arthur J. Yost's resulting injuries.

7. As a direct, proximate and legal result of the defective Cordless Hammer Drill and its component parts, the Cordless Hammer Drill failed, which resulted in Arthur J. Yost falling from the top of a ladder and suffering injuries.

8. By reason of the foregoing, Defendants DeWalt Industrial Tool Co., and Platt Electric Supply, Inc., and Does 1-100, are strictly liable in tort to Plaintiff for his injuries and economic and non-economic damages as permitted by applicable law and in amounts according to proof at trial.



SHORT TITLE:  Yost v DeWalt

CASE NUMBER:

PLD-PI-001(2)

Second _____  CAUSE OF ACTION—General Negligence
(number)

Page 8 _____

ATTACHMENT TO [x] Complaint [ ] Cross - Complaint

*(Use a separate cause of action form for each cause of action.)*

GN-1. Plaintiff (name):  Arthur R. Yost, Jr.

alleges that defendant (name):  DeWalt Industrial Tool Co.. and Platt Electric
Supply, Inc.

[X] Does  1 _____ to 100 _____

was the legal (proximate) cause of damages to plaintiff.  By the following acts or omissions to act, defendant
negligently caused the damage to plaintiff
on (date):  October 11, 2011
at (place):

*(description of reasons for liability):*

1. Plaintiff adopts and incorporates by reference all the allegations contained in Plaintiff's First Cause of
Action for Product Liability as if set forth in full herein.

2. Defendants owed a duty to the purchasers and users of the subject drill, including Plaintiff, to exercise
reasonable care in conducting their business to properly design, research, develop, manufacture, re-
manufacture, produce, process, assemble, inspect, supply, distribute, deliver, broker, market, package, label,
warn, maintain, repair, modify, recall, retrofit, engineer, test, recommend, advertise, lease and/or sell said drill
and its component parts.

3. Defendants knew, or in the exercise of ordinary care should have known, of the means of designing,
researching, developing, manufacturing, re-manufacturing, producing, processing, assembling, inspecting,
testing, installing, supplying, distributing, delivering, brokering, marketing, labeling, adequately
warning, instructing, maintaining, repairing, modifying, recalling, retrofitting, engineering, testing,
recommending, advertising, leasing, selling, or equipping the subject drill and its component parts, such that
the type of incident and resulting injuries as described herein would be prevented.  Defendants knew of the
means of designing, researching, developing, manufacturing, re-manufacturing, producing, processing,
assembling, inspecting, testing, installing, supplying, distributing, delivering, brokering, marketing, packaging,
labeling, adequately warning, instructing, maintaining, repairing, modifying, recalling, retrofitting,
engineering, testing, recommending, advertising, leasing, selling, or equipping a safe drill and/or its component
parts, so that the subject drill would not prematurely disengage a drill bit.

4. Defendants violated their legal duty of reasonable care by their wrongdoing, unreasonable acts and
omissions, carelessness and misconduct, and were negligent.  Defendants were negligent in designing,
researching, developing, manufacturing, re-manufacturing, producing, processing, assembling, inspecting,
testing, installing, supplying, distributing, delivering, brokering, marketing, packaging, labeling, adequately
warning, instructing, maintaining, repairing, modifying, recalling, retrofitting, engineering, testing,
recommending, advertising, leasing, selling, or equipping the subject drill and/or its component parts.
Defendants knew, or in the exercise of ordinary care should have known, that the subject drill and/or its
component parts were defective and unsafe for those persons likely to use the drill for the purpose and in the
manner for which it was intended to be used and for purposes reasonably foreseeable to the Defendants.
SEE ATTACHMENT CAUSE OF ACTION--General Negligence--continued

Form Approved for Optional Use
Judicial Council of California
PLD-PI-001(2) [Rev. January 1, 2007]

**CAUSE OF ACTION—General Negligence**

Page 1 of 1
Code of Civil Procedure 425.12

Legal
Solutions
Plus

05/29/2012 17:06   518744. .4                MUSTANG                          PAGE 18/21
                                                                          @017/020

| PETITIONER/PLAINTIFF:  Yost | CASE NUMBER |
| RESPONDENT/DEFENDANT:  DeWalt | |

SEE ATTACHMENT CAUSE OF ACTION--General Negligence--continued
Page 9

5.Defendants were additionally negligent in that they failed to give adequate or proper warnings or
instructions to ordinary users thereof, including Plaintiff, and failed to recall or timely recall the drill or
make appropriate post-marketing efforts to prevent the subject accident and resulting injuries. Said failure
to warn and instruct included the Defendants failing to provide and/or obtain, proper warnings and
instructions for the proper maintenance, repair, assembly, re-assembly, re-manufacture, retrofit,
modification, installation, re-installation, inspection, and/or testing of the subject drill and its component
parts.

6.Defendants' negligence, wrongdoing, tortious conduct, careless acts and omissions alleged
hereinabove, were a direct, proximate and legal cause of the subject accident and the injuries and damages
suffered by Plaintiff.

7.As a direct, proximate and legal result of the misconduct alleged in this cause of action, Defendants
are liable to Plaintiff in negligence for his injuries and damages.



Legal
Solutions
Plus

14

05/29/2012  17:06    51074.   24              MUSTANG                        PAGE  19/21
                                                                                     018/020

| PETITIONER/PLAINTIFF:  Yost | CASE NUMBER |
| RESPONDENT/DEFENDANT:  DeWalt | |

Page: 10
THIRD CAUSE OF ACTION
(LOSS OF CONSORTIUM)

1. Plaintiffs, ARTHUR R. YOST, JR. and ERIKA YOST, repeat, replead and reallege, as though set forth herein, the allegations contained in the First and Second Causes of Action.

2. At all times relevant to this action, plaintiffs, ARTHUR R. YOST, JR. and ERIKA YOST, were, and now are, husband and wife.

3. That by reason of the acts of defendants, and each of them, as herein alleged, and as a direct and proximate result thereof, plaintiffs ARTHUR R. YOST, JR. and ERIKA YOST suffered loss of consortium and thereby sustained economic and non-economic damages.



05/29/2012  17:06   5187441  .4                    MUSTANG                              PAGE   20/21
                                                                                        ☑ 019/020

---

SHORT TITLE:  Yost v DeWalt                                         | CASE NUMBER

PLD-PI-001(6)

### Exemplary Damages Attachment                                   Page  11

ATTACHMENT TO  [X] Complaint   [ ] Cross-Complaint

EX-1.  As additional damages against defendant (name): DeWalt Industrial Tool Co.

  Plaintiff alleges defendant was guilty of
  [X] malice
  [X] fraud
  [X] oppression
  as defined in Civil Code section 3294, and plaintiff should recover, in addition to actual damages, damages
  to make an example of and to punish defendant.

EX-2.  The facts supporting plaintiff's claim are as follows:

  On October 11, 2011, while performing his job as an electrician, Plaintiff Arthur Yost fell off his
  ladder, sustaining serious injuries, when the subject Cordless Hammer Drill unexpectedly and
  prematurely disengaged a drill bit.

  Long before October 11, 2011, Defendants and their corporate officers, directors, and managing
  agents, knew at all relevant times before October 11, 2011, that the Cordless Hammer Drill with its
  component parts was by virtue of its defective and dangerous nature and/or character, dangerous for
  its intended purpose and/or use by Plaintiff herein and other such members of the public.

  Defendants and their officers, directors, and managing agents, knew that the defective drill and its
  component parts were dangerous because Defendants knew and/or had notice that said model drill had
  failed to perform safely in tests, simulations, investigations, and/or studies conducted by or on behalf of
  said Defendants, and/or by others, including private and public entities and individuals.

  Defendants and their officers, directors, and managing agents, knew that the defective drill and its
  component parts were dangerous because of prior complaints and notice from purchasers and users of
  said model of drill.

  Defendants and their officers, directors, and managing agents, acted in conscious and willful
  disregard of the safety of plaintiff and other members of the public by failing to properly or adequately
  test the defective drill.

  Despite the knowledge of the Defendants, and their corporate officers, directors, and managing
  agents, as alleged above, Defendants, with conscious disregard for the rights, safety and well-being of
  plaintiff and other members of the public, placed the subject drill in the stream of commerce.

  Despite the knowledge of the Defendants, and their corporate officers, directors, and managing
  agents, as alleged above, Defendants, with conscious disregard for the rights, safety and well-being of
  plaintiff and other members of the public, have not recalled the subject drill.

  See Exemplary Damages Attachment--continued

EX-3.  The amount of exemplary damages sought is
  a. [X] not shown, pursuant to Code of Civil Procedure section 425.10.
  b. [ ]  $

Form Approved for Optional Use
Judicial Council of California          **EXEMPLARY DAMAGES ATTACHMENT**        Legal        Code of Civil Procedure, § 425.12
PLD-PI-001(6) [Rev. January 1, 2007]                                           Solutions
                                                                               ⚖ Plus

16

05/29/2012  17:06    510744  24                MUSTANG                              PAGE   21/21

| PETITIONER/PLAINTIFF: Yost | CASE NUMBER |
|---|---|
| RESPONDENT/DEFENDANT: DeWalt | |

Exemplary Damages Attachment--continued
Page 12

Despite the knowledge of the Defendants, and their corporate officers, directors, and managing agents, as alleged above, Defendants, with conscious disregard for the rights, safety and well-being of plaintiff and other members of the public, have not alerted, advised, warned or otherwise adequately informed purchasers and/or users of the defective and dangerous nature and/or character of the subject drill.

Defendants and their corporate officers, directors, and managing agents, failed to alert, advise, warn or otherwise adequately inform purchasers and/or users of the dangerous and defective character of the subject drill and its component parts, while knowing that said product would not be and/or were not likely to be, examined or inspected for defects by their purchasers and/or users.

Further, the Defendants and their officers, directors, and managing agents, acted in the manner described above and/or failed to take the actions mentioned above, for reasons of economic gain, and to save money and increase their business profits. Defendants consciously, willfully and wantonly decided that their profits were more valuable and important than human suffering and life.

In doing the acts herein alleged, Defendants and their officers, directors, and managing agents, directly, and in authorizing and ratifying the conduct of each of them, acted despicably and with a willful and conscious disregard of the rights and safety of others and are liable under California Civil Code §3294 for exemplary and/or punitive damages in an amount to be shown according to proof at trial.

Plaintiff is therefore entitled to an award of exemplary and punitive damages against said Defendants.



Legal
Solutions
ⓒ Plus

05/29/2012  17:06   518744  24                    MUSTANG                         PAGE  08/2!
                                                                                  ☒ 007/020

ATTACHMENT CV-5012

## CIVIL LAWSUIT NOTICE
*Superior Court of California, County of Santa Clara*
*191 N. First St., San Jose, CA 95113*

CASE NUMBER: **1 1 2 C V 2 2 5 2 5 2**

### [ PLEASE READ THIS ENTIRE FORM ]

**PLAINTIFF** (the person suing): Within 60 days after filing the lawsuit, you must serve each Defendant with the *Complaint, Summons*, an *Alternative Dispute Resolution (ADR) Information Sheet*, and a copy of this *Civil Lawsuit Notice*, and you must file written proof of such service.

---

**DEFENDANT** (The person sued): You must do each of the following to protect your rights:

1. You must file a written response to the *Complaint*, using the proper legal form or format, in the Clerk's Office of the Court, within **30 days** of the date you were served with the *Summons* and *Complaint*;
2. You must serve by mail a copy of your written response on the Plaintiff's attorney or on the Plaintiff if Plaintiff has no attorney (to "serve by mail" means to have an adult other than yourself mail a copy); and
3. You must attend the first Case Management Conference.

**Warning: If you, as the Defendant, do not follow these instructions,
you may automatically lose this case.**

---

**RULES AND FORMS:** You must follow the California Rules of Court and the Superior Court of California, County of Santa Clara Local Civil Rules and use proper forms. You can obtain legal information, view the rules and receive forms, free of charge, from the Self-Help Center at 99 Notre Dame Avenue, San Jose (408-882-2900 x-2926), www.scselfservice.org (Select "Civil") or from:

- State Rules and Judicial Council Forms: www.courtinfo.ca.gov/forms and www.courtinfo.ca.gov/rules
- Local Rules and Forms: http://www.sccsuperiorcourt.org/civil/rule1toc.htm

**CASE MANAGEMENT CONFERENCE (CMC):** You must meet with the other parties and discuss the case, in person or by telephone, at least 30 calendar days before the CMC. You must also fill out, file and serve a *Case Management Statement* (Judicial Council form CM-110) at least 15 calendar days before the CMC.

*You or your attorney must appear at the CMC. You may ask to appear by telephone – see Local Civil Rule 8.*

---

Your Case Management Judge is: **Honorable Mark H. Pierce**        Department: **9**

The 1st CMC is scheduled for: (Completed by Clerk of Court)
          Date:  **OCT 0 2 2012**    Time: **1:30 PM**  in Department: **9**

The next CMC is scheduled for: (Completed by party if the 1st CMC was continued or has passed)
          Date: _____   Time: _____  in Department: _____

---

**ALTERNATIVE DISPUTE RESOLUTION (ADR):** If all parties have appeared and filed a completed *ADR Stipulation Form* (local form CV-5008) at least 15 days before the CMC, the Court will cancel the CMC and mail notice of an ADR Status Conference. Visit the Court's website at www.sccsuperiorcourt.org/civil/ADR/ or call the ADR Administrator (408-882-2100 x-2530) for a list of ADR providers and their qualifications, services, and fees.

**WARNING:** Sanctions may be imposed if you do not follow the California Rules of Court or the Local Rules of Court.

---

18

# SANTA CLARA COUNTY SUPERIOR COURT
# ALTERNATIVE DISPUTE RESOLUTION
# INFORMATION SHEET

Many cases can be resolved to the satisfaction of all parties without the necessity of traditional litigation, which can be expensive, time consuming, and stressful. The Court finds that it is in the best interests of the parties that they participate in alternatives to traditional litigation, including arbitration, mediation, neutral evaluation, special masters and referees, and settlement conferences. Therefore, all matters shall be referred to an appropriate form of Alternative Dispute Resolution (ADR) before they are set for trial, unless there is good cause to dispense with the ADR requirement.

*What is ADR?*

ADR is the general term for a wide variety of dispute resolution processes that are alternatives to litigation. Types of ADR processes include mediation, arbitration, neutral evaluation, special masters and referees, and settlement conferences, among others forms.

*What are the advantages of choosing ADR instead of litigation?*

ADR can have a number of advantages over litigation:

- ADR can save time. A dispute can be resolved in a matter of months, or even weeks, while litigation can take years.

- ADR can save money. Attorney's fees, court costs, and expert fees can be reduced or avoided altogether.

- ADR provides more participation. Parties have more opportunities with ADR to express their interests and concerns, instead of focusing exclusively on legal rights.

- ADR provides more control and flexibility. Parties can choose the ADR process that is most likely to bring a satisfactory resolution to their dispute.

- ADR can reduce stress. ADR encourages cooperation and communication, while discouraging the adversarial atmosphere of litigation. Surveys of parties who have participated in an ADR process have found much greater satisfaction than with parties who have gone through litigation.

*What are the main forms of ADR offered by the Court?*

Mediation is an informal, confidential, flexible and non-binding process in which the mediator helps the parties to understand the interests of everyone involved, and their practical and legal choices. The mediator helps the parties to communicate better, explore legal and practical settlement options, and reach an acceptable solution of the problem. The mediator does not decide the solution to the dispute; the parties do.

Mediation may be appropriate when:
- The parties want a non-adversary procedure
- The parties have a continuing business or personal relationship
- Communication problems are interfering with a resolution
- There is an emotional element involved
- The parties are interested in an injunction, consent decree, or other form of equitable relief

Neutral evaluation, sometimes called "Early Neutral Evaluation" or "ENE", is an informal process in which the evaluator, an experienced neutral lawyer, hears a compact presentation of both sides of the case, gives a non-binding assessment of the strengths and weaknesses on each side, and predicts the likely outcome. The evaluator can help parties to identify issues, prepare stipulations, and draft discovery plans. The parties may use the neutral's evaluation to discuss settlement.

Neutral evaluation may be appropriate when:
- The parties are far apart in their view of the law or value of the case
- The case involves a technical issue in which the evaluator has expertise
- Case planning assistance would be helpful and would save legal fees and costs
- The parties are interested in an injunction, consent decree, or other form of equitable relief

-over-

---

05/29/2012  17:05   510746  /4          MUSTANG                    PAGE  05/2.
                                                                   @004/020

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Joshua Henderson, Esq. SBN 248366<br>Carcione, Cattermole, Dolinski, et al.<br>601 Brewster Ave., Second Floor<br>Redwood City, CA 94064<br>TELEPHONE NO: 650-367-6811  FAX NO: 650-367-0367<br>ATTORNEY FOR (Name): Arthur J. Yost | EN_ _RSED<br>FILED<br>__ MAY 24  AM 10: 25<br><br>E. M. Rawson |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Santa Clara
STREET ADDRESS: 191 North First Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Jose, CA 95113
BRANCH NAME:

CASE NAME:  Yost, et al. v DeWalt Industrial Tool Co.;
et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [X] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | 112CV225252<br>JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [X] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition (not specified above) (43)

2. This case [ ] is  [X] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties        d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel   e. [ ] Coordination with related actions pending in one or more courts
          issues that will be time-consuming to resolve                in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence            f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [X] monetary  b. [ ] nonmonetary; declaratory or injunctive relief  c. [X] punitive

4. Number of causes of action (specify): 3

5. This case [ ] is  [X] is not  a class action suit.

6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: 5/23/12

Joshua Henderson, Esq. SBN 248366
(TYPE OR PRINT NAME)                                        (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Legal<br>Solutions<br>Plus | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10 |

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
  Auto (22)—Personal Injury/Property
    Damage/Wrongful Death
  Uninsured Motorist (46) *(if the
    case involves an uninsured
    motorist claim subject to
    arbitration, check this item
    instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
  Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
      Wrongful Death
  Product Liability *(not asbestos or
    toxic/environmental)* (24)
  Medical Malpractice (45)
    Medical Malpractice—
      Physicians & Surgeons
    Other Professional Health Care
      Malpractice
  Other PI/PD/WD (23)
    Premises Liability (e.g., slip
      and fall)
    Intentional Bodily Injury/PD/WD
      (e.g., assault, vandalism)
    Intentional Infliction of
      Emotional Distress
    Negligent Infliction of
      Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
  Business Tort/Unfair Business
    Practice (07)
  Civil Rights (e.g., discrimination,
    false arrest) *(not civil
    harassment)* (08)
  Defamation (e.g., slander, libel)
    (13)
  Fraud (16)
  Intellectual Property (19)
  Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
      *(not medical or legal)*
  Other Non-PI/PD/WD Tort (35)
**Employment**
  Wrongful Termination (36)
  Other Employment (15)

**Contract**
  Breach of Contract/Warranty (06)
    Breach of Rental/Lease
      Contract *(not unlawful detainer
      or wrongful eviction)*
    Contract/Warranty Breach—Seller
      Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/
      Warranty
    Other Breach of Contract/Warranty
  Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case—Seller Plaintiff
    Other Promissory Note/Collections
      Case
  Insurance Coverage *(not provisionally
    complex)* (18)
    Auto Subrogation
    Other Coverage
  Other Contract (37)
    Contractual Fraud
    Other Contract Dispute
**Real Property**
  Eminent Domain/Inverse
    Condemnation (14)
  Wrongful Eviction (33)
  Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent
      domain, landlord/tenant, or
      foreclosure)*
**Unlawful Detainer**
  Commercial (31)
  Residential (32)
  Drugs (38) *(if the case involves illegal
    drugs, check this item; otherwise,
    report as Commercial or Residential)*
**Judicial Review**
  Asset Forfeiture (05)
  Petition Re: Arbitration Award (11)
  Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
      Case Matter
    Writ–Other Limited Court Case
      Review
  Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor
      Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
  Antitrust/Trade Regulation (03)
  Construction Defect (10)
  Claims Involving Mass Tort (40)
  Securities Litigation (28)
  Environmental/Toxic Tort (30)
  Insurance Coverage Claims
    *(arising from provisionally complex
    case type listed above)* (41)
**Enforcement of Judgment**
  Enforcement of Judgment (20)
    Abstract of Judgment (Out of
      County)
    Confession of Judgment *(non-
      domestic relations)*
    Sister State Judgment
    Administrative Agency Award
      *(not unpaid taxes)*
    Petition/Certification of Entry of
      Judgment on Unpaid Taxes
    Other Enforcement of Judgment
      Case
**Miscellaneous Civil Complaint**
  RICO (27)
  Other Complaint *(not specified
    above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-
      harassment)*
    Mechanics Lien
    Other Commercial Complaint
      Case *(non-tort/non-complex)*
    Other Civil Complaint
      *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
  Partnership and Corporate
    Governance (21)
  Other Petition *(not specified
    above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
      Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief from Late
      Claim
    Other Civil Petition

CM-010 [Rev. July 1, 2007]                    **CIVIL CASE COVER SHEET**                          Page 2 of 2

EXHIBIT B



# CERTIFIED COPY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

---o0o--

ARTHUR R. YOST, JR., et al.,

       Plaintiffs,

vs.                  CASE NO.  3:12-cv03969 JSW

DEWALT INDUSTRIAL TOOL COMPANY,
et al.,

       Defendants.

_____/


DEPOSITION OF ARTHUR R. YOST, JR.

Friday, May 3, 2013



Reported by:
JOAN B. MERTEN
CSR No. 6922

Hutchings Number 441093

ARTHUR R. YOST, JR. - 5/3/2013

1                      A P P E A R A N C E S

2

3    For the Plaintiffs:        LAW OFFICES OF CARCIONE,
                                CATTERMOLE, DOLINSKI, OKIMOTO,
4                               STUCKY, UKSHINI, MARKOWITZ &
                                CARCIONE, LLP
5                               601 Brewster Avenue, 2nd Floor
                                Redwood City, California 94063
6
                         BY:  AARON B. MARKOWITZ, ESQ.
7

8    For the Defendants Black & Decker, U.S. Inc., and
     Platt Electric:
9
                                HAIGHT BROWN & BONSTEEL, LLP
10                              555 S. Flower Street, 45th Floor
                                Los Angeles, California 90071
11
                         BY:  KEVIN R. CRISP, ESQ.
12

13   ALSO PRESENT:             DANIEL STROUD, Videographer, PES
                                Legal Video
14
                                ---oOo---
15

16

17

18

19

20

21

22

23

24

25

ARTHUR R. YOST, JR. - 5/3/2013

Page 42

1    Wings the first time you've fallen off a ladder?

2        A.   No.

3        Q.   How many prior times have you fallen off a

4    ladder?

5        A.   I may have fallen off -- in the last 25 years,

6    I've probably fallen off ladders 20 times, always in a

7    manner where I could catch myself and land gracefully,

8    though.

9        Q.   I'm stuck on what a graceful fall off a ladder

10   would look like, but let me move on.  All right.

11            If you know, did the ladder you were on at the

12   time of the accident fall over?

13       A.   No.

14       Q.   No, you don't know; or no, it didn't?

15       A.   It was still standing when I was laying down on

16   the floor looking back up at it.

17       Q.   The 60-plus hours per week you said you typically

18   worked in the field before the accident, was that the

19   majority of time you actually doing construction work --

20       A.   Yes.

21       Q.   -- as opposed to standing around having coffee

22   and supervising?

23       A.   Yes.  That's a rare occasion for me typically.

24       Q.   I noticed today you have a cane.

25       A.   Yes.

ARTHUR R. YOST, JR. - 5/3/2013

1    uneven surface, and it will start walking on you and it

2    will just kind of cause you to get tossed, and you just

3    jump clear of it and land on your feet --

4        Q.   Had you ever fallen -- I'm sorry, go ahead.

5        A.   -- if that occurs.  That's all.  I was finishing

6    up.

7        Q.   Had you ever fallen off a ladder while using any

8    kind of drill?

9        A.   No.

10       Q.   At the time of your fall, was the A-frame of the

11   ladder you were on fully extended?

12       A.   Yes.

13       Q.   And the arms were locked down in the horizontal

14   position?

15       A.   Correct.

16       Q.   And the side of the ladder that was closest to

17   the surface you were drilling on, would that be the

18   backside of the ladder?

19       A.   Yes.

20       Q.   Was part of the ladder extending through a

21   doorway?

22       A.   I don't think so.  I think it was right up to

23   some glass doors right below that wall section where I was

24   drilling.

25       Q.   So the two feet of the fully opened ladder would

ARTHUR R. YOST, JR. - 5/3/2013

Page 70

1  in drills, that's the only way it comes.  I don't think

2  they actually make a drill this powerful as a drill only.

3  I think they all have a hammer drill feature on them.

4      Q.  Before your accident, had you ever used the

5  DeWALT cordless drill as a hammer drill?

6      A.  Yes.

7      Q.  And that was in what kind of material?

8      A.  Just for drilling in a cinder block, and brick

9  and softer materials.

10      Q.  Did you get any instruction on how to use the

11  drill from anybody at the outlet?

12      A.  No.

13      Q.  Did it come with instructions?

14      A.  Yes.

15      Q.  Have you ever read the instructions?

16      A.  A lot of times I'll read them just to see if

17  there's any maintenance or upkeep that needs to be

18  performed periodically, but after 25 years in the trade, a

19  guy pretty much knows how to operate a drill.

20          So the answer to that would probably be no, I

21  wouldn't say that I read --

22          MR. MARKOWITZ:  Just to note for the record, we

23  have the instruction manual, the actual instruction manual

24  here (indicating).

25          MR. CRISP:  Okay.

ARTHUR R. YOST, JR. - 5/3/2013

1    Q.  I don't want you to guess, but my specific

2  question is:  Do you recall whether before your accident

3  you had ever read the instructions for the DeWALT hammer

4  drill?

5    A.  I would say no, I didn't make it a specific

6  function to read that or specific task.

7    Q.  And based on your years of experience, you

8  believe you knew how to use a hammer drill?

9    A.  Yes.

10    Q.  Did the kit come with an auxiliary handle?

11    A.  Yes.

12    Q.  Before your accident, had you ever used that

13  handle on the drill?

14    A.  Yes.  It was used for a number of occasions.

15    Q.  And what kind of occasion would cause you to use

16  that handle on the drill?

17    A.  Like, if you're using a larger boring device,

18  like a whole saw or something where it's got much more

19  leverage or much more advantage over your own leverage.

20    Q.  When you would use the DeWALT drill as a hammer

21  drill, would you use it with that handle on there?

22    A.  Yes.

23    Q.  Every time?

24    A.  I wouldn't say every time.  Kind of depends on

25  what size of hole you're drilling.  If you're drilling a

ARTHUR R. YOST, JR. - 5/3/2013

Page 83

1    time is 11:58 a.m.  This marks Video 2, Volume 1, in the

2    deposition of Arthur Yost.

3              (A one-page color copy of a photograph was

4              marked for identification as Defendant's

5              Exhibit No. 2.)

6              (A one-page color copy of a photograph was

7              marked for identification as Defendant's

8              Exhibit No. 3.)

9         MR. CRISP:  Q.  Let me show you Exhibits 2 and 3,

10   which are two photographs I took with my phone at the

11   restaurant, and ask you if in either photograph or

12   possibly both we can see the place where you were doing

13   your work at the time of your fall.

14        A.  Yes, you can see in both of them.

15        Q.  Okay.

16        A.  Well, see both sides of the wall where I was

17   working.  This one photo here shows where I was standing

18   (indicating).

19        Q.  When you say "this one photo here," you're

20   referring to Exhibit 2?

21        A.  Yes.

22        Q.  And there is one glass door showing in this photo

23   that has an "EXIT" sign over it.

24        A.  Yes.

25        Q.  Is that the area where you were working?

ARTHUR R. YOST, JR. - 5/3/2013

Page 84

1     A.  Yes.

2     Q.  And relative to where we see that "EXIT" sign in

3  Exhibit 2, where were you actually drilling the hole?

4     A.  I had actually -- I found it necessary to run a

5  conduit out of the back of that exit sign to the light

6  fixture and emergency fixture on the opposite side of that

7  same wall.  And I had removed that exit sign and was

8  drilling the hole behind it to stick a conduit out of it

9  and through the wall.

10    Q.  So you were going to supply power to the sign on

11  the outside by hooking it up to the one on the inside?

12    A.  Yes.  It's all the same circuitry.

13    Q.  And the sign on the outside was going to be what

14  kind of sign?

15    A.  It's an emergency -- called an emergency egress

16  fixture.  It only illuminates when the power goes out.

17  And it's shown in the other photo.

18    Q.  And looking at photo 3, the fixture that you're

19  talking about is over the door just behind what looks like

20  a flat screen TV?

21    A.  Yeah.  It almost looks like a shadow on the wall,

22  the black box behind the television.

23    Q.  I'm going to draw a circle on Exhibit 3.  Have I

24  circled the fixture that I'm talking about?

25    A.  Correct, yes.

ARTHUR R. YOST, JR. - 5/3/2013

Page 85

1      Q.   And was that actually in place at the time when

2  you were doing your work?

3      A.   No, it's what was being added.

4      Q.   Okay.

5           And the exit sign that we see in Exhibit 2 was in

6  place at the time?

7      A.   Yes.

8      Q.   And I'm going to circle the exit sign that you

9  were obtaining the power from.  Have I --

10     A.   Yes.

11     Q.   -- circled the correct one?

12     A.   That's correct.

13     Q.   The material that you were attempting to drill

14  through was what?

15     A.   The inside just consisted of one layer of

16  5/8th-inch-thick gypsum board or Sheetrock that I had just

17  gone through and then 6 inches of wood.

18     Q.   Your intention was to go all the way through the

19  6 inches of wood?

20     A.   Just to the point where I could feel the stucco

21  exterior on the other side and stop, back a bit out and

22  put a masonry type bit in there to continue on through.

23     Q.   And the diameter of the bits you were using was

24  what?

25     A.   7/8th inch.

ARTHUR R. YOST, JR. - 5/3/2013

Page 86

1    Q.   Is it fair to call the 6 inches of wood you were
2    going through a header?
3        A.   Yes, that was a header of solid -- like a
4    glulam-style header.
5        Q.   And it was definitely glulam as opposed to a
6    single piece of wood?
7        A.   I can't say that for sure because it was an
8    existing header with existing Sheetrock and stucco on both
9    sides of it, so I don't know exactly how it was comprised.
10   I believe it was a glulam header, though.
11       Q.   The restaurant has a lot of glulam beams in it.
12       A.   Yeah.  This was a remodeled building from a
13   previous restaurant, so that's why I say it was existing.
14       Q.   Before your accident, had you gone sufficiently
15   through the 6 inches of wood to get to the stucco?
16       A.   Yes.
17       Q.   And how do you know when you reach the stucco?
18       A.   Actually, now that I'm thinking about it, I don't
19   think it was a full 6-inch wall, I think it was only a
20   3 1/2-inch wall, a 3 1/2-inch-thick wall.
21       Q.   So your best estimate is the beam, be it solid or
22   glulam, was more like 3 1/2 inches thick?
23       A.   Yes.
24       Q.   And do you remember going all the way through the
25   wood and getting to the stucco?

ARTHUR R. YOST, JR. - 5/3/2013

1        A.   Yes.

2        Q.   So there should have been an approximately

3   7/8th-inch diameter hole all the way through the wood

4   header?

5        A.   Yes.

6        Q.   And your intention was to change out the ship

7   auger bit and put in something that would be better suited

8   to stucco?

9        A.   Correct.

10       Q.   On approximately how many prior occasions had you

11  drilled comparable holes through wood using this saw?

12       A.   This particular drill?

13       Q.   Yeah.

14       A.   At the most, maybe two other times I've done that

15  exact install or performed that same function.

16       Q.   What would be the most common job you would use

17  the DeWALT drill for?

18       A.   The most common job I would use -- in the

19  electrical industry anyway -- is using those Unibits or

20  Vari-Bits I was describing earlier, which starts off with

21  a smaller diameter and increases to a size for an

22  electrical knock-off size.

23       Q.   The drill at least now has "EC1" written in what

24  looks like Sharpie on the base.

25       A.   That's actually intended to be ECI for Energy.

ARTHUR R. YOST, JR. - 5/3/2013

Page 88

1    Concepts Incorporated.

2        Q.  Oh, sorry.

3           And that was on there at the time of the

4    accident?

5        A.  Yes.  That's so my drill didn't end up in

6    somebody else's toolbox.  That's very common.  Everybody

7    in the industry uses them.

8        Q.  At the time you completed the approximately

9    7/8th-inch diameter hole through the header, do you

10   remember what level of the ladder you were standing on?

11       A.  I'm 99% sure I was on the fifth step.

12       Q.  Counting from the bottom?

13       A.  Yes.

14       Q.  And was all of the hole drilled while you were

15   standing on that step?

16       A.  Yes.

17       Q.  And were you using one hand or two on the drill

18   as you drilled the hole?

19       A.  Definitely using two hands.

20       Q.  And why do you say "definitely using two hands"?

21       A.  Just because -- well, as you read in the safety

22   instructions, these drills have so much torque.  If they

23   hang up from hitting a nail in the wood or anything

24   unexpected, they've got plenty of torque to snap your

25   wrist if you're just holding them with one hand.

ARTHUR R. YOST, JR. - 5/3/2013

1    Q.   Can you show me the position of your two hands on

2    the drill while you were drilling the hole while on the

3    ladder?

4    A.   Sure.

5    Q.   **Still charged.**

6    A.   I would have had ahold of it just like this,

7    using this hand for control and this hand to brace the bit

8    straight in (indicating).  I don't know if the camera can

9    see that.  Just like this (indicating).

10   THE VIDEOGRAPHER:  Okay.

11   MR. CRISP:  Q.  And you'd be using it

12   horizontally?

13   A.   Yes.

14   Q.   **Holding it horizontally?**

15   A.   Drilling through a vertical surface, yeah.

16   Q.   **And relative to your torso, at what height were**

17   **you holding it?**

18   A.   I was approximately right at waist level pushing

19   through or holding the drill.

20   Q.   **Were you leaning on the drill at the time you**

21   **drilled the hole?**

22   MR. MARKOWITZ:  Objection.  Vague.

23   THE WITNESS:  I'm not sure what you mean by

24   "leaning on the drill."

25   MR. CRISP:  Q.  Okay.

ARTHUR R. YOST, JR. - 5/3/2013

Page 90

1          Well, was this the type of bit that would proceed

2     into the wood on its own or did you have to push the drill

3     in?

4          A.   Yes, it has a self-feed tip on the bit where once

5     it gets started into the bit, it pulls itself through as

6     it goes.

7          Q.   What I'm asking then is:  Did you hold the drill

8     and let it pull itself through the hole?

9          A.   Yes.

10         Q.   So it wasn't necessary for you to push it or lean

11    against it with your body to get it to make the hole?

12         A.   No.

13         Q.   And then how did you as the operator know that

14    you'd gone through the material and had reached the

15    stucco?

16         A.   As I said, with the self-feed pilot tip on there,

17    once that exits the other side of the wood, it stops

18    pulling itself through.  And as soon as that touches the

19    backside of the stucco, it stops.  It stops pulling itself

20    through obviously.

21         Q.   Now, in past situations where you'd been doing

22    this same operation, had you been able to simply manually

23    pull the bit out of the wood by pulling on the drill?

24         A.   Yes.  Usually with a brand-new bit, which I had,

25    and if the moisture content in the wood isn't too high,

ARTHUR R. YOST, JR. - 5/3/2013

1    another design feature on these bits is as the wood is

2    chipped away from the drilling action, the woodchips feed

3    back out of the hole and clears the hole to where you can

4    easily pull the bit out of the hole when you're done.

5        Q.   So on the other occasions where you'd done this

6    same operation, because of the self-cleaning auger action

7    of the bit, the materials moved out of the channel and you

8    were able to simply manually pull on the handle of the

9    drill and have the bit come out?

10       A.   Yes.

11       Q.   And just before your accident, I take it that

12   procedure did not work?

13       A.   Correct.

14       Q.   It was stuck?

15       A.   It wasn't stuck.  But as I mentioned in the

16   previous statement, the moisture -- if the moisture

17   content is too high in the wood, the chips don't feed out

18   of the hole very well, it kind of jams up, to where the

19   bit won't freely pull out of the hole you've just drilled.

20       Q.   Did you try without using the motor to pull on

21   the drill and withdraw the bit from the hole?

22       A.   Yeah, maybe just slightly.  But I could tell --

23   you know, there again with my years of experience in the

24   trade, I knew I was going to have to use the motor to back

25   it out of the hole.

ARTHUR R. YOST, JR. - 5/3/2013

Page 92

1    Q.   Your body position on the ladder as you were

2    drilling the hole, were you more or less straight upright?

3    A.   Yes.

4    Q.   Had you ever had this situation before where you

5    could tell by feel that it wasn't going to be possible to

6    manually pull the auger bit out of the hole, so you had to

7    power it out?

8    A.   Yes.  As I said, once you've drilled a few

9    hundred holes in your life, you get a pretty good feel for

10   what you're going to end up having to go through to get a

11   bit back out of a bore hole and wood, whether it's just

12   going to come out or whether you're going to have to back

13   it out.

14   Q.   On other occasions, you would get the bit out of

15   the material by reversing the drill?

16   A.   Yes.

17   Q.   And would the drill, as part of its design, come

18   out under its own power in reverse or would you have to

19   physically pull it out?

20   A.   No, it operates kind of like unscrewing a screw.

21   When you back it out, the direction of the twist on the

22   bit, just kind of twist it out like a thread on a screw,

23   in a nice, controlled fashion typically.

24   Q.   When you got ready to attempt to reverse the

25   drill to get the bit out of the header, did you leave it

38

ARTHUR R. YOST, JR. - 5/3/2013

1    in low?

2         A.  Yes, it stayed in low.

3         Q.  And what did you do to reverse the direction of

4    travel on the drill?

5         A.  I just pushed the forward-reverse button on the

6    handle of the drill above the trigger and hit the trigger

7    to reverse the rotation of the motor.

8         Q.  And at the time you lost your balance on the

9    ladder, did you have two hands on the drill?

10        A.  Yes.

11        Q.  And your body was more or less straight up and

12   down on the ladder?

13        A.  Yes.  I was straight up, maybe pulling back on it

14   slightly so it would bite into the woodchips and back

15   itself out of the wall.

16        Q.  And were you holding the drill in the position

17   you've already demonstrated for us, horizontally with two

18   hands?

19        A.  Yes, same position.

20        Q.  So you definitely remember that you were pulling

21   some on the drill?

22        A.  Yes, just slightly, like I said, just to get it

23   to bite and climb its way out of the hole.

24        Q.  Before your fall, were you able to reverse the

25   drill bit at all?

ARTHUR R. YOST, JR. - 5/3/2013

Page 94

1    A.   I'm not sure I understand what you're asking.

2    Q.   I'm asking if there was a period of a second or

3  two perhaps where the bits started going backwards before

4  your accident or maybe it never moved at all?

5    A.   No, it never moved at all.

6    Q.   And your impression of what happened is that the

7  chuck released the bit more or less instantly when you

8  applied power in reverse?

9    A.   Exactly.

10   Q.   And that threw you off balance?

11   A.   Yeah.

12   Q.   On prior occasions, have you ever had an

13 auger-style bit pull out of the hole suddenly when

14 reversing?

15   A.   No.  Usually if it's in that particular physical

16 state with the woodchips binding it up, it claims up -- it

17 climbs itself right out of the hole pretty -- like I said,

18 pretty much in a controlled fashion where you can feel how

19 much is moving and how much you need to brace yourself for

20 when it does come out of the hole.

21   Q.   How do you brace yourself for it coming out of

22 the hole?

23   A.   You just make sure you're not leaning back,

24 pulling against it if you're standing on an unleveled

25 surface.  Or even when you're standing on solid ground,

ARTHUR R. YOST, JR. - 5/3/2013

Page 95

1    you need to prepare yourself for that releasing itself

2    once it clears the hole, so...  Usually once you get it

3    started biting into the woodchips in the hole and climbing

4    itself out of the hole, it will just back itself out just

5    like it pulled itself through when you're drilling with

6    it.

7         Q.   How physically on the ladder would you brace

8    yourself for the point where it comes out of the hole?

9         A.   You would just stand more upright to where you

10   were on balance and not applying pressure one way or the

11   other pushing or pulling.

12        And at some point typically when the bit is just

13   about ready to clear the hole and come out, you might grab

14   onto the ladder with one hand and finish backing it all

15   out, backing it the rest of the way out the hole, which is

16   holding the drill with one hand.  That's a pretty common

17   practice.

18        Q.   And you grab the ladder with one hand so that you

19   don't lose your balance and fall off?

20        A.   Exactly.  But when the bit is still that far into

21   the wall and there's a potential for a lot of torque on

22   it, you hold onto it with both hands until it climbs its

23   way most of the way out.

24        Q.   At the time that the chuck came off the shank of

25   the bit, your body was upright on the ladder or leaning

ARTHUR R. YOST, JR. - 5/3/2013

1   back?

2        A.   I was upright; but like I said, applying a little

3   bit of pressure back pulling against it.  Maybe five

4   pounds of pressure pulling against it.

5        Q.   We had some earlier questions and answers about

6   falling gracefully off ladders and trying to jump off and

7   land on your feet.

8             When you started to fall, did you try to do that,

9   to fall gracefully off the ladder?

10       A.   In this incident?

11       Q.   Yes.

12       A.   No, I -- well, that's what I tried, but it all

13  happened so fast, that my body -- I would estimate my body

14  was at about a 45-degree angle to the floor falling

15  backwards before I realized even what had happened.  Both

16  my feet were still on that fifth step of the ladder.  And

17  I tried to jump clear of it and land on two feet, but I

18  wasn't -- I was too close to the floor to get two feet

19  under me.

20       Q.   And you landed only on your right foot?

21       A.   All my weight on my right foot, yes.

22       Q.   Approximately how high off the floor were your

23  feet at the time you started to fall?

24       A.   That fifth step is usually about 5 feet off the

25  floor, maybe 5 1/2 feet, somewhere in that range.

ARTHUR R. YOST, JR. - 5/3/2013

1    Q.   The first part of your body to hit the floor

2    would be your right foot?

3    A.   Yes.

4    Q.   And then where did it go from there?

5    A.   I just kind of rolled and tumbled to try to

6    absorb as much of the impact as I could, but the damage

7    was already done.

8    Q.   In addition to speed changes that can be made in

9    this drill by putting the top sliding switch in 1, 2 or 3,

10   can you control the speed of rotation by how far you pull

11   in on the trigger?

12   A.   Yes, it's got a variable speed trigger on it.

13   Q.   Can you give me any estimate of how far you had

14   the trigger pulled at the time the chuck came off the

15   shank of the bit?

16   A.   I'm not sure I could even estimate that, it's

17   been so long ago.  I think -- I'm pretty sure I eased into

18   it just because I know the known hazard that if the bit

19   comes off faster than you're expecting it to, it could

20   send you to the ground.  I definitely didn't just squeeze

21   the trigger to its fullest speed.

22   Q.   The gentleman who gave you the ride to the

23   hospital, has he ever told you that he actually saw the

24   fall?

25   A.   We were standing -- I'm sure he saw part of it.

ARTHUR R. YOST, JR. – 5/3/2013

Page 98

1    We were both working in the same room, about 15 feet from

2    one another, both on ladders.  We were having a

3    conversation and he was facing me, so I'm sure he saw at

4    least part of the fall.

5        Q.  And did you tell him before you got to the

6    hospital that you believe you had fallen because the bit

7    came out of the chuck?

8        A.  Oh, he's -- I'm pretty sure he saw that part, and

9    he saw me with the drill.  And we talked about the fact

10   that it did come loose while it was back in the bit on the

11   wall.  And he saw the drill in my hand and the bit in the

12   wall.

13       Q.  If you can pick up the drill again one more time.

14   Put your hands in the position that you were using to

15   reverse it.

16       A.  Just like this (indicating).

17       Q.  Okay.

18           But it was flat.

19       A.. Well (indicating)...

20       Q.  Okay.

21       A.  Straight.--

22       Q.  What I'm going to ask you now, and you're already

23   kind of in the position, how far out from your body was

24   the drill?

25       A.  Maybe a foot out from my torso to the back of the

ARTHUR R. YOST, JR. - 5/3/2013

1   drill, (indicating).  I don't know if you can see that in

2   the camera, but that far (indicating).  Got it?

3         THE VIDEOGRAPHER:  (Nods head.)

4         MR. CRISP:  Q.  What's the largest hole you've

5   ever drilled with the DeWALT cordless drill?

6         A.  I've drilled up to probably 2-inch holes,

7   2 1/2-inch holes with a hole-saw-type boring bit.

8         Q.  And typically after you purchased it, was the

9   drill something you would use practically every day on the

10  job?

11        A.  Oh, yes.

12        Q.  And other than the problem you told me about with

13  the one particular kind of Vari-Bit and getting that

14  firmly grasped by the chuck, did you have any problems or

15  issues with the drill whatsoever other than what happened

16  at your accident?

17        A.  Not that I'd ever noticed.

18        Q.  At the restaurant itself after your accident, do

19  you remember actually seeing the drill bit still up in the

20  hole?

21        A.  Just for the 15 minutes while I was still there

22  before we got me into a vehicle and left to go to the

23  hospital.  That's the only point in time where I ever saw

24  the drill bit in the wall is right immediately following

25  the accident.

EXHIBIT C

1  Kevin R. Crisp (Bar No. 97504)
   Elizabeth P. Trent (Bar No. 272258)
2  HAIGHT BROWN & BONESTEEL LLP
   555 South Flower Street, Forty-Fifth Floor
3  Los Angeles, California 90071
   Telephone:  213.542.8000
4  Facsimile:  213.542.8100

5  Attorneys for Defendants Black & Decker (US) Inc.
   and Platt Electric Supply, Inc.

6

7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10                   SAN FRANCISCO

11  ARTHUR R. YOST, JR.; ERIKA YOST,,    )   Case No. 3:12-cv-03969 JSW
                                         )
12          Plaintiffs,                  )   [Assigned to Judge Hon. Jeffrey S. White ]
                                         )
13      vs.                              )   **INTERROGATORIES TO PLAINTIFF**
                                         )   **ARTHUR YOST (SET ONE)**
14  DEWALT INDUSTRIAL TOOL CO.;          )
    PLATT ELECTRICAL SUPPLY, INC.,       )
15  DOES 1 TO 100,                       )
                                         )
16          Defendants.                  )
                                         )
17  ────────────────────────────────────

18      ASKING PARTY:          DEFENDANT BLACK & DECKER (US) INC.

19      ANSWERING PARTY:       PLAINTIFF ARTHUR YOST

20      SET NO.:               (ONE)

21

22      TO PLAINTIFF AND TO HIS ATTORNEY OF RECORD:

23      PLEASE TAKE NOTICE that pursuant to provisions of Federal Rule of Civil

24  Procedure 36 *et seq.*, Defendant BLACK & DECKER (US) INC. requests that Plaintiff

25  ARTHUR YOST answer under oath the following first set of interrogatories.

26

27

28

LAW OFFICES
HAIGHT, BROWN &
BONESTEEL, L.L.P.
Los Angeles

SW05-0000349
9918395.1

1

INTERROGATORIES

47

## DEFINITIONS

Each demand incorporates by reference the following definitions:

"**YOU**" and "**YOUR**" means you ARTHUR YOST.

"**DOCUMENT**" has the meaning set forth in *Evidence Code* § 250, and also refers to any and all printed, typewritten, handwritten or drawn matters, of whatever character, and all reproductions thereof, including, without limitation, reports, records, ledgers, books of account, invoices, receipts, letters, telegrams, facsimile transmissions, electronic communications, handwritten notes, diaries, contracts, agreements, brochures, maps, diagrams, statistical charts, illustrations, publications and transcriptions by mechanical, electronic or photographic means such as punch cards, taped records, magnetic computer discs or microfilm.

Whenever the term "**INCIDENT**" appears in this demand, it refers to the accident or occurrence upon which YOUR Complaint is based.

"**IDENTIFY**" is defined to include the names of all persons or entities, their addresses and telephone numbers.

## INTERROGATORIES

**INTERROGATORY NO. 1**:

List with specificity each and every fact which supports YOUR cause of action for Strict Liability against Black & Decker (US) Inc.

**INTERROGATORY NO. 2**:

Identify by name, address, and telephone number each and every witness to each and every fact which supports YOUR cause of action for Strict Liability against Black & Decker (US) Inc.

**INTERROGATORY NO. 3**:

List with specificity each and every fact which supports YOUR cause of action for Negligence against Black & Decker (US) Inc.

LAW OFFICES
HAIGHT, BROWN &
BONESTEEL, L.L.P.
Los Angeles

SW05-0000349
9918395.1

2

INTERROGATORIES

48

1  **INTERROGATORY NO. 4**:

2      Identify by name, address, and telephone number each and every witness to each

3  and every fact which supports YOUR cause of action for Negligence against Black &

4  Decker (US) Inc.

5  **INTERROGATORY NO. 5**:

6      List with specificity each and every fact which supports the allegation in YOUR

7  Complaint that the cordless hammer drill YOU were using at the time of the INCIDENT

8  was defective when it left the control of Black & Decker (US) Inc.

9  **INTERROGATORY NO. 6**:

10      Identify by name, address, and telephone number each and every witness to each

11  and every fact which supports the allegation in YOUR Complaint that the cordless hammer

12  drill YOU were using at the time of the INCIDENT was defective when it left the control

13  of Black & Decker (US) Inc.

14  **INTERROGATORY NO. 7**:

15      List with specificity each and every fact which supports the allegation in YOUR

16  Complaint that the cordless hammer drill YOU were using at the time of the INCIDENT

17  was being used in the manner intended by Black & Decker (US) Inc. when the INCIDENT

18  occurred.

19  **INTERROGATORY NO. 8**:

20      Identify by name, address, and telephone number each and every witness to each

21  and every fact which supports the allegation in YOUR Complaint that the cordless hammer

22  drill YOU were using at the time of the INCIDENT was being used in the manner intended

23  by Black & Decker (US) Inc. when the INCIDENT occurred.

24  **INTERROGATORY NO. 9**:

25      List with specificity each and every fact which supports the allegation in YOUR

26  Complaint that the cordless hammer drill YOU were using at the time of the INCIDENT

27  was being used in a manner that was reasonably foreseeable by Black & Decker (US) Inc.

28

LAW OFFICES
HAIGHT, BROWN &
BONESTEEL, L.L.P.
Los Angeles

SW05-0000349
9918395.1                                3                    INTERROGATORIES                    49

1  as involving a substantial danger not readily apparent to YOU when the INCIDENT

2  occurred.

3  **INTERROGATORY NO. 10**:

4        Identify by name, address, and telephone number each and every witness to each

5  and every fact which supports the allegation in YOUR Complaint that the cordless hammer

6  drill YOU were using at the time of the INCIDENT was being used in a manner that was

7  reasonably foreseeable by Black & Decker (US) Inc. as involving a substantial danger not

8  readily apparent to YOU when the INCIDENT occurred.

9  **INTERROGATORY NO. 11**:

10       List with specificity each and every defect to the cordless hammer drill YOU were

11  using at the time of the INCIDENT that YOU allege existed when the INCIDENT

12  occurred.

13  **INTERROGATORY NO. 12**:

14       List with specificity each and every fact which supports the allegation in YOUR

15  Complaint that Black & Decker (US) Inc. failed to give adequate or proper warnings or

16  instructions to ordinary users of the cordless hammer drill YOU were using at the time of

17  the INCIDENT.

18  **INTERROGATORY NO. 13**:

19       Identify by name, address, and telephone number each and every witness to each

20  and every fact which supports the allegation in YOUR Complaint that Black & Decker

21  (US) Inc. failed to give adequate or proper warnings or instructions to ordinary users of the

22  cordless hammer drill YOU were using at the time of the INCIDENT.

23  **INTERROGATORY NO. 14**:

24       List with specificity each and every fact which supports the allegation in YOUR

25  Complaint that Black & Decker (US) Inc. knew before October 11, 2011, that the cordless

26  hammer drill YOU were using at the time of the INCIDENT was dangerous for its

27  intended purpose and/or use.

28

LAW OFFICES
HAIGHT, BROWN &
BONESTEEL, L.L.P.
Los Angeles

SW05-0000349
9918395.1

4

INTERROGATORIES

50

**INTERROGATORY NO. 15**:

Identify by name, address, and telephone number each and every witness to each and every fact which supports the allegation in YOUR Complaint that Black & Decker (US) Inc. knew before October 11, 2011, that the cordless hammer drill YOU were using at the time of the INCIDENT was dangerous for its intended purpose and/or use.

**INTERROGATORY NO. 16**:

List with specificity each and every fact which supports the allegation in YOUR Complaint that YOU are entitled to an award of exemplary damages against Black & Decker (US) Inc.

**INTERROGATORY NO. 17**:

Identify by name, address, and telephone number each and every witness to each and every fact which supports the allegation in YOUR Complaint that YOU are entitled to an award of exemplary damages against Black & Decker (US) Inc.

**INTERROGATORY NO. 18**:

List with specificity each and every fact which supports YOUR claim in YOUR Complaint for wage loss.

**INTERROGATORY NO. 19**:

Identify by name, address, and telephone number each and every witness to each and every fact which supports YOUR claim in YOUR Complaint for loss of earning capacity.

**INTERROGATORY NO. 20**:

Identify by name, address, and telephone number each and every purchaser and/or user of the Dewalt-brand 18 V cordless hammer drill, Model DCD970, who made a complaint prior to the INCIDENT that the drill was defective and/or dangerous, as alleged in YOUR Complaint.

LAW OFFICES
HAIGHT, BROWN &
BONESTEEL, L.L.P.
Los Angeles

SW05-0000349
9918395.1

5

INTERROGATORIES

51

1  **INTERROGATORY NO. 21**:

2      List with specificity the stated basis by each purchaser and/or user identified in

3  YOUR response to Special Interrogatory No. 22 for his/her/it's Complaint that the Dewalt-

4  brand 18 V cordless hammer drill, Model DCD970, was defective and/or dangerous.

5  **INTERROGATORY NO. 22**:

6      List with specificity each and every test, simulation, investigation, or study in which

7  the Dewalt-brand 18 V cordless hammer drill, Model DCD970, failed to perform safely.

8  **INTERROGATORY NO. 23**:

9      List with specificity each and every fact which supports the allegation in YOUR

10 Complaint that the Dewalt-brand 18 V cordless hammer drill, Model DCD970, failed to

11 perform safely on tests, simulations, investigations or studies.

12 **INTERROGATORY NO. 24**:

13     If your response to Request for Admission No. 1, served concurrently with these

14 interrogatories is not an unqualified admission, state all facts upon which YOU base

15 YOUR response.

16 **INTERROGATORY NO. 25**:

17     If your response to Request for Admission No. 2, served concurrently with these

18 interrogatories is not an unqualified admission, state all facts upon which YOU base

19 YOUR response.

20

21 Dated: August 8, 2013                    HAIGHT BROWN & BONESTEEL LLP

22

23                                          By:  _Elizabeth Trent_

24                                               Kevin R. Crisp
                                                 Elizabeth Trent
25                                               Attorneys for Defendant,
                                                 Black & Decker (US) Inc.

26

27

28

LAW OFFICES
HAIGHT, BROWN &
BONESTEEL, L.L.P.
Los Angeles

SW05-0000349
9918395.1                          6                     INTERROGATORIES          52

1

**PROOF OF SERVICE**

2

3  STATE OF CALIFORNIA          )
                                ) ss.:
4  COUNTY OF SAN FRANCISCO      )

5  *ARTHUR R. YOST vs. DEWALT INDUSTRIAL TOOL CO.; PLATT ELECTRICAL*
   *SUPPLY 3:12-cv-03969 JSW*

6

7        I am employed in the County of San Francisco, State of California.  I am over the
   age of 18 and not a party to the within action.  My business address is 555 S. Flower
   Street, 45th Floor, Los Angeles, CA 90071.

8

9        On August 8, 2013, I served the within document(s) described as:

10 **SPECIAL INTERROGATORIES TO PLAINTIFF ARTHUR YOST (SET
   ONE)**

11       on the interested parties in this action as stated below:

12       Aaron B. Markowitz, Esq.
         Carcione, Cattermoke, Dolinski, Stucky,
13       Markowitz & Carcione, LLP
         601 Brewster Avenue
14       P.O. Box 3389
         Redwood City, CA 94064-3389

15

16       *Tel: (650) 367-6811*
         *Fax: (650) 367-0367*
17       *Attorneys for Plaintiffs*

   [X]   (MAIL) by placing a true copy thereof in sealed envelope(s) addressed above and
18       causing such envelope(s) to be deposited in the U.S. Mail at San Francisco,
         California.  The envelope was mailed with postage thereon fully prepaid.

19       Executed on August 8, 2013, at Los Angeles, California.

20

21       I declare under penalty of perjury that I am employed in the office of a member of
   the bar of this Court at whose direction the service was made and that the foregoing is true
   and correct.

22

23       _____        _____
              Hope Elliot                                        (Signature)
24          (Type or print name)

25

26

27

28

LAW OFFICES
HAIGHT, BROWN &
BONESTEEL, L.L.P.
Los Angeles

SW05-0000349
9918395.1

7

SPECIAL INTERROGATORIES

53

1  Joseph W. Carcione, Jr., Esq. (State Bar No. 56693)
   Aaron B. Markowitz, Esq. (State Bar No. 220694)
2  CARCIONE, CATTERMOLE, DOLINSKI,
   STUCKY, MARKOWITZ & CARCIONE, L.L.P.
3  601 Brewster Avenue, 2nd Floor
   P.O. Box 3389
4  Redwood City, CA 94064-3389
   Telephone: (650) 367-6811
5  Facsimile: (650) 367-0367

6  Attorneys for Plaintiffs

7                UNITED STATES DISTRICT COURT

8             NORTHERN DISTRICT OF CALIFORNIA

9                 SAN FRANCISCO DIVISION

10

11
   ARTHUR R. YOST, JR.; ERIKA YOST,        Case No. CV-12-03969-JST
12
                Plaintiffs,
13                                          PLAINTIFF ARTHUR YOST'S RESPONSE
   vs.                                      TO DEFENDANT BLACK & DECKER(US)
14                                          INC'S SPECIAL INTERROGATORIES, SET
   DEWALT INDUSTRIAL TOOL CO.;              ONE
15 PLATT ELECTRIC SUPPLY, INC., DOES
   1 TO 100,
16
                Defendants.
17 _____/

18

19

20 PROPOUNDING PARTY:        Defendant:   BLACK & DECKER (US) INC.

21 RESPONDING PARTY:         Plaintiff:   ARTHUR YOST

22 SET NUMBER:               ONE (1)

23 TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

24        Plaintiff herewith responds to these interrogatories propounded as set forth above and

25 served pursuant to Code of Civil Procedure Section 2030.010.   The answers herein are given

26 without prejudice to producing at trial subsequently discovered information, or information

27 omitted from the answers herein as a result of good faith oversight.

28

                                    1.
208181 / sas    Plaintiff Arthur Yost's Response to Defendant Black & Decker(us) Inc's Special Interrogatories, Set One
                                        10/9/13

## RESPONSES TO SPECIAL INTERROGATORIES

**Special Interrogatory No. 1:**

List with specificity each and every fact which supports YOUR cause of action for Strict Liability against Black & Decker (US) Inc.

**Response to Special Interrogatory No. 1:**

Plaintiff's counsel objects to the extent that the request is overbroad and seeks information protected by the attorney client privilege and as attorney work-product. Plaintiff's counsel further object to the extent that the request calls for a narrative and prematurely seeks expert opinions. Subject to and without waiving this objection Plaintiff responds that the following is a brief summary of the facts that support his claims for strict product liability, negligence and punitive damages:

Dating back to the mid-2000s, Defendant manufactured the XRPIV series drills, model numbers DC925 and DC927, which had a known defect to wit that with loading on the chuck while the drill was in reverse, the chuck would unexpectedly release. Knowing of this defect, Defendant continued to manufacture and sell the XRPIV series drills without any warning to consumers. In 2007, Defendant decided that it would release a new product line– the XRPV series of drills. In designing this new product, Defendant decided to use the same chuck that was used on the XRPIV drills (a) because it is exclusive to DeWalt and (b) it would require less testing of the drill, and these two factors would help DeWalt keep and even grow their market share of the premium cordless drill market.

At around this time, as a result of "ABR testing, field returns, service centers, and customer service calls," Defendant learned that the chuck in the XRPIV drills would fail under loading in reverse and release the bit. In light of this information, Defendant still continued to manufacture and sell the XRPIV drills, and still gave no warning to consumers. It did, however, raise this issue to ROHM, the manufacturer of the chuck, in the Summer of 2008, so that the problem could be addressed in the XRPV drills.

Together with ROHM, Defendant was able to identify the root causes of this problem, which can be summarized as:

2.

1       •    the pawl is not strong enough to remain engaged with the ratchet

2       •    there are geometric issues with the pawl and ratchet design leading to poor

3            engagement

4       •    both the pawl and ratchet would suffer from deformation affecting engagement

5       •    the bias springs would weaken over time; and

6       •    several manufacturing defects including– pawl pivot point out of spec;

7            misassembly of the bias spring; and machining burs left in the jaw holder

8       The design was modified with the intended effect of reducing failure events in the pawl

9 and ratchet engagement, which actually resulted in an increase in the holding torque of the

10 pawl and ratchet; however, no testing was done to determine whether this new design would be

11 able to withstand normal wear and tear. The XRPV drills were then manufactured and sold

12 with the modified chuck beginning in the Spring of 2008. Still no warnings to consumers

13 about the problem that the chuck has with the chuck opening with loading in reverse.

14       Then in October of 2010 Plaintiff Arthur Yost purchased a DeWalt 18V Cordless XRP

15 Drill (DCD970). While at Platt Eletric Supply, Mr. Yost saw that DeWalt was offering a deal

16 where if you traded in your old tools, they would give a rebate on a new set of tools. Mr. Yost

17 then purchased the DeWalt 18V Cordless XRP Drill (DCD970) as apart of a set with five

18 other tools. He used it for a year without a problem but then when drilling while standing on a

19 ladder, the bit that Mr. Yost was using got stuck. He then attempted to back the drill out by

20 operating the drill in reverse. This reverse loading then caused the chuck to unexpectedly

21 release the bit. The release of the bit was as a result of the same defect that Black & Decker

22 had identified years before, but had failed to remove from the design and manufacture of the

23 subject drill because Black & Decker wanted to rush their product to market to maintain their

24 market share in the particular sector of the premium cordless drill industry.

25       As a result of the defect in the drill, Mr. Yost fell from the ladder on which he was

26 standing and suffered the injuries and damages complained of herein.

27       In addition to this brief summary of facts, Plaintiff would also refer defendants to the

28 various documents produced by all parties to this case and the depositions of Plaintiff and

3.

1  defendants all of which contain numerous other specific facts which support Plaintiff's claims

2  in this matter.  Plaintiff incorporates all such documents and depositions into this response.

3       Plaintiff would also note that Plaintiff's own discovery and investigation is not

4  complete and that discovery and investigation will undoubtedly uncover additional facts and

5  information to support these claims.  Further, Plaintiff will be disclosing experts before trial

6  whose expert opinions will also support these claims.

7

8  **Special Interrogatory No. 2:**

9       Identify by name, address, and telephone number each and every witness to each and

10  every fact which supports YOUR cause of action for Strict Liability against Black & Decker

11  (US) Inc.

12  **Response to Special Interrogatory No. 2:**

13       Plaintiff's counsel objects to the extent that the request is overbroad and seeks

14  information protected by the attorney client privilege and as attorney work-product.  Plaintiff's

15  counsel further object to the extent that the request calls for a narrative and prematurely seeks

16  expert opinions.  Subject to and without waiving this objection Plaintiff responds: The only

17  eyewitness to the accident is a person named Shane who worked for Entertech, 9555 James

18  Ave., South Minneapolis, MN (952) 887-9000.   As for the other facts, the "eyewitnesses"

19  would be employees of ROHM and Black and Decker, whose names, addresses and telephone

20  numbers are known to Defendant, but not Plaintiff.

21

22  **Special Interrogatory No. 3:**

23       List with specificity each and every fact which supports YOUR cause of action for

24  Negligence against Black & Decker (US) Inc.

25  **Response to Special Interrogatory No. 3:**

26       Plaintiff's counsel objects to the extent that the request is overbroad and seeks

27  information protected by the attorney client privilege and as attorney work-product.  Plaintiff's

28  counsel further object to the extent that the request calls for a narrative and prematurely seeks

208181 / sas      Plaintiff Arthur Yost's Response to Defendant Black & Decker(us) Inc's Special Interrogatories, Set One
10/9/13

57

1  expert opinions. Subject to and without waiving this objection Plaintiff responds: See

2  Response to Special Interrogatory No. 1.

3

4  **Special Interrogatory No. 4:**

5      Identify by name, address, and telephone number each and every witness to each and

6  every fact which supports YOUR cause of action for Negligence against Black & Decker (US)

7  Inc.

8  **Response to Special Interrogatory No. 4:**

9      Plaintiff's counsel objects to the extent that the request is overbroad and seeks

10  information protected by the attorney client privilege and as attorney work-product. Plaintiff's

11  counsel further object to the extent that the request calls for a narrative and prematurely seeks

12  expert opinions. Subject to and without waiving this objection Plaintiff responds: See

13  Response to Special Interrogatory No. 2.

14

15  **Special Interrogatory No. 5:**

16      List with specificity each and every fact which supports the allegation in YOUR

17  complaint that the cordless hammer drill YOU were using at the time of the INICIDENT was

18  defective when it left the control of Black & Decker (US) Inc.

19  **Response to Special Interrogatory No. 5:**

20      Plaintiff's counsel objects to the extent that the request is overbroad and seeks

21  information protected by the attorney client privilege and as attorney work-product. Plaintiff's

22  counsel further object to the extent that the request calls for a narrative and prematurely seeks

23  expert opinions. Subject to and without waiving this objection Plaintiff responds: See

24  Response to Special Interrogatory No. 1.

25

26  **Special Interrogatory No. 6:**

27      Identify by name, address, and telephone number each and every witness to each and

28  every fact which supports the allegation in YOUR complaint that the cordless hammer drill

5.

Plaintiff Arthur Yost's Response to Defendant Black & Decker(us) Inc's Special Interrogatories, Set One
10/9/13

1 | YOU were using at the time of the INCIDENT was defective when it left the control of Black

2 | & Decker (US) Inc.

3 | **Response to Special Interrogatory No. 6:**

4 | Plaintiff's counsel objects to the extent that the request is overbroad and seeks

5 | information protected by the attorney client privilege and as attorney work-product. Plaintiff's

6 | counsel further object to the extent that the request calls for a narrative and prematurely seeks

7 | expert opinions. Subject to and without waiving this objection Plaintiff responds: See

8 | Response to Special Interrogatory No. 2.

9 |

10 | **Special Interrogatory No. 7:**

11 | List with specificity each and every fact which supports the allegation in YOUR

12 | complaint that the cordless hammer drill YOU were using at the time of the INCIDENT was

13 | being used in the manner intended by Black & Decker (US) Inc. when the INCIDENT

14 | occurred.

15 | **Response to Special Interrogatory No. 7:**

16 | Plaintiff's counsel objects to the extent that the request is overbroad and seeks

17 | information protected by the attorney client privilege and as attorney work-product. Plaintiff's

18 | counsel further object to the extent that the request prematurely seeks expert opinions. Subject

19 | to and without waiving this objection Plaintiff responds: Plaintiff was drilling with the drill.

20 | He understands this to be an intended use of the drill.

21 |

22 | **Special Interrogatory No. 8:**

23 | Identify by name, address, and telephone number each and every witness to each and

24 | every fact which supports the allegation in YOUR Complaint that the cordless hammer drill

25 | You were using at the time of the INCIDENT was being used in the manner intended by Black

26 | and Decker (US) Inc. when the INCIDENT occurred.

27 | **Response to Special Interrogatory No. 8:**

28 | The only eyewitness to the accident is Shane who worked for Entertech, 9555 James

Plaintiff Arthur Yost's Response to Defendant Black & Decker(us) Inc's Special Interrogatories, Set One
10/9/13

1   Ave., South Minneapolis, MN (952) 887-9000.

2

3   **Special Interrogatory No. 9:**

4        List with specificity each and every fact which supports the allegation in YOUR

5   Complaint that the cordless hammer drill YOU were using at the time of the INCIDENT was

6   being used in a manner that was reasonably foreseeable by Black & Decker (US) Inc. as

7   involving a substantial danger not readily apparent to YOU when the INCIDENT occurred.

8   **Response to Special Interrogatory No. 9:**

9        Plaintiff's counsel objects to the extent that the request is overbroad and seeks

10  information protected by the attorney client privilege and as attorney work-product. Plaintiff's

11  counsel further object to the extent that the request prematurely seeks expert opinions. Subject

12  to and without waiving this objection Plaintiff responds: Plaintiff was drilling with the drill.

13  He understands this to be an intended use of the drill.

14

15  **Special Interrogatory No. 10:**

16       Identify by name, address, and telephone number each and every witness to each and

17  every fact which supports the allegation in YOUR Complaint that the cordless hammer drill

18  YOU were using at the time of the INCIDENT was being used in a manner that was reasonably

19  foreseeable by Black & Decker (US) Inc. as involving a substantial danger not readily apparent

20  to YOU when the INCIDENT occurred.

21  **Response to Special Interrogatory No. 10:**

22       The only eyewitness to the accident is Shane who worked for Entertech, 9555 James

23  Ave., South Minneapolis, MN (952) 887-9000.

24

25  **Special Interrogatory No. 11:**

26       List with specificity each and every defect to the cordless hammer drill YOU were

27  using at the time of the INCIDENT that YOU allege existed when the INCIDENT occurred.

28  **Response to Special Interrogatory No. 11:**

1        Plaintiff objects to the extent that this interrogatory is overbroad as it seeks information

2  concerning defects in the drill entirely unrelated to this case and Plaintiff's injury. Plaintiff's

3  counsel further objects to the extent that the interrogatory prematurely seeks expert opinions

4  and doers so from a lay witness. Subject to and without waiving this objection, Plaintiff

5  responds: The subject drill was defective at the time of the incident in that the chuck released

6  when there was loading on the bit while being operated in reverse. They may have been other

7  defects in the drill, but this is the defect that caused Plaintiff's injury.

8

9  **Special Interrogatory No. 12:**

10       List with specificity each and every fact which supports the allegation in YOUR

11  Complaint that Black & Decker (US) Inc. failed to give adequate or proper warnings or

12  instructions to ordinary users of the cordless hammer drill YOU were using at the time of the

13  INCIDENT.

14  **Response to Special Interrogatory No. 12:**

15       Plaintiff objects to the extent that this interrogatory is overbroad as it seeks information

16  concerning defects in the drill entirely unrelated to this case and Plaintiff's injury. Plaintiff's

17  counsel further objects to the extent that the interrogatory prematurely seeks expert opinions

18  and doers so from a lay witness. Subject to and without waiving this objection, Plaintiff

19  responds: There was no warning to advise users that the drill has a tendency to fail where the

20  chuck opens up on loading when the drill is in reverse, which defect defendant knew of.

21

22  **Special Interrogatory No. 13:**

23       Identify by name, address and telephone number each and every witness to each and

24  every fact which supports the allegation in YOUR Complaint that Black & Decker (US) Inc.

25  failed to give adequate or proper warnings or instructions to ordinary users of the cordless

26  hammer drill YOU were using at the time of the INCIDENT.

27  **Response to Special Interrogatory No. 13:**

28       Plaintiff's counsel objects to the extent that the request is overbroad and seeks

8.

208181 / sas      Plaintiff Arthur Yost's Response to Defendant Black & Decker(us) Inc's Special Interrogatories, Set One
10/9/13

61

information protected by the attorney client privilege and as attorney work-product. Plaintiff's counsel further object to the extent that the request calls for a narrative and prematurely seeks expert opinions. Subject to and without waiving this objection Plaintiff responds: See Response to Special Interrogatory No. 2.

**Special Interrogatory No. 14:**

List with specificity each and every fact which supports the allegation in YOUR Complaint that Black & Decker (US) Inc. knew before October 11, 2011, that the cordless hammer drill YOU were using at the time of the INCIDENT was dangerous for its intended purpose and/or use.

**Response to Special Interrogatory No. 14:**

Plaintiff's counsel objects to the extent that the request is overbroad and seeks information protected by the attorney client privilege and as attorney work-product. Plaintiff's counsel further object to the extent that the request calls for a narrative and prematurely seeks expert opinions. Subject to and without waiving this objection Plaintiff responds: See Response to Special Interrogatory No. 1.

**Special Interrogatory No. 15:**

Identify by name, address, and telephone number each and every witness to each and every fact which supports the allegation in YOUR Complaint that Black & Decker (US) Inc. knew before October 11, 2011, that the cordless hammer drill YOU were using at the time of the INCIDENT was dangerous for its intended purpose and/or use.

**Response to Special Interrogatory No. 15:**

Plaintiff's counsel objects to the extent that the request is overbroad and seeks information protected by the attorney client privilege and as attorney work-product. Plaintiff's counsel further object to the extent that the request calls for a narrative and prematurely seeks expert opinions. Subject to and without waiving this objection Plaintiff responds: See Response to Special Interrogatory No. 2.

9.

**Special Inerrogatory No. 16:**

     List with specificity each and every fact which supports the allegation in YOUR complaint that YOU are entitled to an award of exemplary damages against Black & Decker (US) Inc.

**Response to Special Interrogatory No. 16:**

     Plaintiff's counsel objects to the extent that the request is overbroad and seeks information protected by the attorney client privilege and as attorney work-product. Plaintiff's counsel further object to the extent that the request calls for a narrative and prematurely seeks expert opinions. Subject to and without waiving this objection Plaintiff responds: See Response to Special Interrogatory No. 1.

**Special Interrogatory No. 17:**

     Identify by name, address, and telephone number each and every witness to each and every fact which supports the allegation in YOUR Complaint that YOU are entitled to an award of exemplary damages against Black & Decker (US) Inc.

**Response to Special Interrogatory No. 17:**

     Plaintiff's counsel objects to the extent that the request is overbroad and seeks information protected by the attorney client privilege and as attorney work-product. Plaintiff's counsel further object to the extent that the request calls for a narrative and prematurely seeks expert opinions. Subject to and without waiving this objection Plaintiff responds: See Response to Special Interrogatory No. 2.

**Special Interrogatory No. 18:**

     List with specificity each and every fact which supports YOUR claim in YOUR Complaint for wage loss.

**Response to Special Interrogatory No. 18:**

     Plaintiff's counsel objects to the extent that the request is overbroad and seeks information protected by the attorney client privilege and as attorney work-product. Plaintiff's

counsel further object to the extent that the request calls for a narrative and prematurely seeks
expert opinions. Subject to and without waiving this objection Plaintiff responds that the
following is a brief summary of the facts that support his claims for lost income: Plaintiff
began his own business as an electrician in 2004. By 2007, his business was very successful,
but then the economy took a downturn in 2008. Plaintiff then again began rebuilding and the
business would have been back to where it was in 2007 by 20012 or 2013 at the latest. As a
result of the accident, Plaintiff not only lost four months of income, but he has been unable to
work at his full capacity since the accident. Further, Plaintiff now has to rebuld his business
again. The specific facts and financial evidence can be found in the financial documents that
Plaintif has produced in discovery and will be supplemented by the opinions of Plaintiff's
experts at trial.

**Special Interrogatory No. 19:**

Identify by name, address, and telephone number each and every witness to each and
every fact which supports YOUR claim in YOUR Complaint for loss of earning capacity.

**Response to Special Interrogatory No. 19:**

Plaintiff's counsel objects to the extent that the request is overbroad and seeks
information protected by the attorney client privilege and as attorney work-product. Plaintiff's
counsel further object to the extent that the request calls for a narrative and prematurely seeks
expert opinions. Subject to and without waiving this objection Plaintiff responds that the
following is a brief summary of the facts that support his claims for lost income: Plaintiff
would refer all of the people that Plaintiff has worked with over the years, whose identity can
be found in the documents that Plaintiff has produce. Plaintiff would also identify his wife,
bookeeper and accountant as witnesses.

**Special Interrogatory No. 20:**

Identify by name, address, and telephone number each and every purchases and/or user
of the Dewalt-brand 18V cordless hammer drill, Model DCD970, who made a complaint prior

11.

64

1   to the INCIDENT that the drill was defective and/or dangerous, as alleged in YOUR

2   Complaint.

3   **Response to Special Interrogatory No. 20:**

4       Plaintiff's counsel objects to this interrogatory as these people are known to defendants,

5   and their identifying information was withheld in discovery.

6

7   **Special Interrogatory No. 21:**

8       List with specificity the stated basis by each purchaser and/or user identified in YOUR

9   response to Special Interrogatory No. 22 for his/her/it's Complaint that the Dewalt-brand 18V

10   cordless hammer drill, Model DCD970, was defective and/or dangerous.

11   **Response to Special Interrogatory No. 21:**

12       Plaintiff's counsel objects to this interrogatory as these people are known to defendants,

13   and their identifying information was withheld in discovery.

14

15   **Special Interrogatory No. 22:**

16       List with specificity each and every test, simulation, investigation, or study in which the

17   Dewalt-brand 18 V cordless hammer drill, Model DCD970, failed to perform safely.

18   **Response to Special Interrogatory No. 22:**

19       Plaintiff's counsel objects to this interrogatory to the extent that this information is

20   known to defendants, but has thus far been withheld in discovery.

21

22   **Special Interrogatory No. 23:**

23       List with specificity each and every fact which supports the allegation in YOUR

24   complaint that the Dewalt-brand 18 V cordless hammer drill, Model DCD970, failed to

25   perform safely on tests, simulations, investigations or studies.

26   **Response to Special Interrogatory No. 23:**

27       Plaintiff's counsel objects to the extent that the request is overbroad and seeks

28   information protected by the attorney client privilege and as attorney work-product. Plaintiff's

1  counsel further object to the extent that the request calls for a narrative and prematurely seeks

2  expert opinions.  Subject to and without waiving this objection Plaintiff responds: See

3  Response to Special Interrogatory No. 1.

4

5  **Special Interrogatory No. 24:**

6       If your response to Request for Admission No. 1, served concurrently with these

7  interrogatories is not an unqualified admission, state all facts upon which YOU base YOUR

8  response.

9  **Response to Special Interrogatory No. 24:**

10       Plaintiff has insufficient information to admit or deny this request. Plaintiff does know

11  that other drills failed in a similar manner as Plaintiff's drill, but Plaintiff has no information

12  on what claims were made to Defendant.

13

14  **Special Interrogatory No. 25:**

15       If your response to Request for Admission No. 2, served concurrently with these

16  interrogatories is not an unqualified admission, state all facts upon which YOU base YOUR

17  response.

18  **Response to Special Interrogatory No. 25:**

19       Plaintiff has insufficient information to admit or deny this request.  Defendant has

20  refused to produce the information on the reasons for the change thus far.

21

22  Dated: October 9, 2013                 CARCIONE, CATTERMOLE, DOLINSKI,
                                      STUCKY, MARKOWITZ & CARCIONE, LLP

23

24                                 By: /s/ Aaron B. Markowitz, Esq.
                                     Attorney for Plaintiffs

25

26

27

28

Plaintiff Arthur Yost's Response to Defendant Black & Decker(us) Inc's Special Interrogatories, Set One
10/9/13

*Yost , et al. v. DeWalt Industrial Tool Co., et al.*
[U.S. District Court, Northern District of California, No. 3:12-cv-03969 JST]

<u>PROOF OF SERVICE</u>

I, the undersigned, declare:

 I am employed in the County of San Mateo, State of California. I am over the age of eighteen and not a party to this action. My business address is 601 Brewster Avenue, Redwood City, California 94063.

 On October 9, 2013, I served the attached document(s):

 PLAINTIFF ARTHUR YOST'S RESPONSE TO DEFENDANT BLACK & DECKER(US) INC'S SPECIAL INTERROGATORIES, SET ONE

__X__ **By MAIL**, being familiar with the practice of this office for the collection and the processing of correspondence for mailing with the United States Postal Service, and deposited in the United States Mail copies of same to the business addresses set forth below, in a sealed envelope fully prepaid.

___ **By FACSIMILE**, by personally transmitting same via an electronic facsimile machine between the hours of 9:00 a.m. and 5:00 p.m. and thereafter deposited same in the United State mail, in Redwood City, California, in a sealed envelope with postage fully prepaid to each of the persons at the addresses listed below.

___ **By PERSONAL DELIVERY**, and personally delivered, or caused to be delivered, same to the addresses listed below.

___ **By FEDERAL EXPRESS**, for delivery the following business day by placing same for collection in a Federal Express Deposit Box to the business addresses set forth below.

___ **By EMAIL**, I transmitted from electronic address ccdlaw@yahoo.com, a true and correct copy of the above-referenced document(s) to the parties listed below.

***Attorneys for Defendants, Stanley Black & Decker, Inc. and Platt Electric Supply, Inc.***
Kevin R. Crisp, Esq.
(kcrisp@hbblaw.com)
Haight Brown & Bonesteel LLP
555 South Flower St., 45th Floor
Los Angeles, CA 90071
Telephone: (213) 542-8000
Facsimile: (213) 542-8100

 I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

 Executed on the above date at Redwood City, California.

14.

Plaintiff Arthur Yost's Response to Defendant Black & Decker(us) Inc's Special Interrogatories, Set One
10/9/13

EXHIBIT D



FIG. 2      FIG. 3      FIG. 4

DRILLING
PERÇAGE
TALADRADO

SCREWDRIVING
VISSAGE
DESTORNILLADO

HAMMERDRILLING
MARTEAU PERFORATEUR
TALADRADO DE PERCUSIÓN

FIG. 5      FIG. 6      FIG. 7

## COMPONENTS (Fig. 1)

A. Trigger switch
B. Forward/reverse button
C. LED light
D. Chuck
E. Torque adjustment collar
F. Mode control collar
G. Gear shifter
H. Side handle (DCD940, DCD950, DCD960, DCD970 only)

### Variable Speed Switch (Fig. 1)

To turn the tool on, squeeze the trigger switch (A). To turn the tool off, release the trigger switch. Your tool is equipped with a brake. The chuck will stop as soon as the trigger switch is fully released.

NOTE: Continuous use in variable speed range is not recommended. It may damage the switch and should be avoided.

### Side Handle (Fig. 1)

⚠ WARNING: To reduce the risk of personal injury, ALWAYS operate the tool with the side handle properly installed. Failure to do so may result in the side handle slipping during tool operation and subsequent loss of control. Hold tool with both hands to maximize control.

Side handle (H) clamps to the front of the gear case and may be rotated 360° to permit right- or left-hand use. Side handle must be tightened sufficiently to resist the twisting action of the tool if the accessory binds or stalls. Be sure to grip the side handle at the far end to control the tool during a stall.

If model is not equipped with side handle, grip drill with one hand on the handle and one hand on the battery pack.

NOTE: Side handle comes equipped on models DCD940, DCD950, DCD960 and DCD970.

### Forward/Reverse Control Button (Fig. 1)

A forward/reverse control button (B) determines the direction of the tool and also serves as a lock off button.

To select forward rotation, release the trigger switch and depress the forward/reverse control button on the right side of the tool.

To select reverse, release the trigger switch and depress the forward/reverse control button on the left side of the tool.

The center position of the control button locks the tool in the OFF position. When changing the position of the control button, be sure the trigger is released.

NOTE: The first time the tool is run after changing the direction of rotation, you may hear a click on start up. This is normal and does not indicate a problem.

### Worklight (Fig. 1)

There is a worklight (C) located just above the trigger switch (A). The worklight will be activated when the trigger switch is squeezed.

NOTE: The worklight is for lighting the immediate work surface and is not intended to be used as a flashlight.

69