1  Joseph W. Carcione, Jr., Esq. (State Bar No. 56693)
   CARCIONE, CATTERMOLE, DOLINSKI,
2  STUCKY, MARKOWITZ & CARCIONE, L.L.P.
   E-mail: carcionelaw@yahoo.com
3  1300 S. El Camino Real, Suite 300
   P.O. Box 5429
4  San Mateo, CA 94402
   Telephone: (650) 367-6811
5  Facsimile: (650) 367-0367

6  Aaron B. Markowitz, Esq. (State Bar No. 220694)
   MARKOWITZ LAW GROUP
7  E-mail: abm@markowitzlawgroup.com
   501 Stockton Avenue, Suite 105
8  San Jose, CA 95126
   Telephone: (408) 642-5937
9  Facsimile: (408) 516-9576

10 Attorneys for Plaintiffs

11

12

13              UNITED STATES DISTRICT COURT

14             NORTHERN DISTRICT OF CALIFORNIA

15                 SAN FRANCISCO DIVISION

16

17 ARTHUR R. YOST, JR.; ERIKA YOST,        Case No. CV-12-03969-JST

18              Plaintiffs,                [Assigned to Judge Jon S. Tigar]

19 vs.                                     Related Case:
                                           Yost v. Rohm Co., Ltd.
20 DEWALT INDUSTRIAL TOOL CO.;             No. 4:13-cv-5203-JST
   PLATT ELECTRIC SUPPLY, INC., DOES
21 1 TO 100,                               **DECLARATION OF DAN COOK**

22              Defendants.
   _____/        Date:  March 20, 2014
23                                         Time:  2:00 p.m.
                                           Ctrm:  9
24

25 I, DAN COOK, declare as follows:

26        I, DAN COOK, declare as follows:

27        1.    I have been working in the construction industry for 54 years. I ran my father's

28 business, E.W. Cook & Sons for many years, until approximately 1983. Additionally, I am the

212211 /                            1.
                            Declaration of Dan Cook

1 President and Owner of Daniel Cook Industries, Inc.

2. I have expertise associated with the use and procurement of machinery and parts that are used in virtually all types of construction and construction projects. I have expertise associated with the use and procurement of power drills.

3. In the winter of 2013, I was contacted by the Law Offices Carcione, Cattermole Dolinski, et al. and was asked to provide consultation and opinions relative to the case of Yost v. DeWalt. I have done a lot of work relative to this case including purchasing equipment, testing various types of drills and going to demonstrations and inspections, including the inspection of the accident drill in this case which was attended by attorneys for Stanley Black and Decker and Rohm (the manufacturer of the chuck), including personnel who flew in from Germany for the inspection.

4. During the course of my efforts in this case, I was given the responsibility to obtain various types of drills. I was also asked to purchase brand new drills and parts.

5. Amongst the parts that I attempted to purchase was a part for the Type 1, Model 970 ... the type and model involved in the subject accident. Specifically, I was asked to obtain as many chucks as I could for the same model of power drill that was involved in this case (the 970, Type 1). The accident drill has a chuck that is designated as "-90".

6. In order to attempt to buy a new replacement chuck for that Type 1, 970, I spoke with Black and Decker dealers, checked online with various companies who provide and sell parts, and looked online at the Black and Decker website. Specifically, I was trying to buy the chuck that had come with the Model 970 Type 1 when it was new.

7. The Black and Decker dealers that I contacted indicated that they did not have that exact chuck for that 970, Type 1 drill that the accident drill originally came with. Indeed, The DeWalt dealer (DeWalt is owned by Black and Decker) in Redding, California, told me that the 970 Type 1 had "a lot of problems". I was told that when Black and Decker had a problem with their drills, they would change the model number. I was told that this Type 1 had a lot of problems and that is why the Type 2 came into existence. The chuck that the Type 1 originally came with when Mr. Yost purchased the drill in 2010 *was not obtainable* as a

1  replacement part, anywhere.

2   8.   I consulted online at the Black and Decker website and found out that, indeed, when one attempted to buy a replacement chuck for the 970, Type 1, a customer obtained instead a "conversion kit" for the Type 1. I attach hereto as Exhibit 19, a page from the Black and Decker website which indicates that for the chuck part for the Type 1 drill there was a "conversion kit" for the Type 1. The "conversion kit" converts a Type 1 drill into a Type 2 drill.

   9.   I have caused the Carcione office to purchase numerous "conversion kits" These "conversion kits" are to be used on the 970 Type 1. These "conversion kits" are not the same as the chuck that was on the 970 Type 1 that Mr. Yost purchased in 2010 and which he was using on the day of his accident on October 11, 2011.

   10.  I was able to obtain through a third party online parts dealer some chucks that, according to the third party dealer, could be used on a Type 1, 970 drill. These chucks, however, are not designated as "-90" chucks. Instead, they were designated as "-90A" chucks.

   11.  The only chucks that could be obtained from Black and Decker for the 970, Type 1 drill were chucks that were designated as part of the "conversion kit" for the Type 1. The "conversion kit" actually changes the Type 1 into a Type 2, 970 drill.

   I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

   Executed on March 10, 2014, at Redding, CA.

   _____
   Dan Cook

212211/
3.
Declaration of Dan Cook